GENERAL GLASS INDUSTRIES COR-
PORATION, on behalf of itself, and
all others similarly situated,

v.

MONSOUR MEDICAL FOUNDATION;
Monsour Medical Center, individually
and as successor to Keystone Medical
Management Company; William J.
Monsour, M.D.; and A.V. Papa, Jr.;

Constance B. Foster, Insurance Commis-
sioner of the Commonwealth of Penn-
sylvania, as Statutory Liquidator of
Keystone Medical Services, Inc., Inter-
venor in D.C.,

General Glass Industries Corporation,
Appellant.

No. 91–3839.

United States Court of Appeals,
Third Circuit.

Argued May 19, 1992.
Decided Aug. 17, 1992.

Fredric E. Orlansky (argued), Vincent A.
DeFalice, Riley & DeFalice, P.C., Pitts-
burgh, Pa., Lewis B. Gardner, General

Glass Industries Corp., Jeanette, Pa., for appellant General Glass Industries Corp.

Jerome Cochran (argued), Alan A. Garfinkel, Klett, Lieber, Rooney & Schorling, Pittsburgh, Pa., for Monsour Medical Foundation, Monsour Medical Center, Inc. and Al Papa, Jr.

Kathryn L. Simpson (argued), Grogan, Graffam, McGinley & Lucchino, P.C., Pittsburgh, Pa., for Constance B. Foster.

Robert Pfaff, Pfaff, McIntyre, Dugas & Hartye, Hollidaysburg, Pa., for William J. Monsour, M.D.

Before: HUTCHINSON, COWEN and GARTH, Circuit Judges.

## OPINION OF THE COURT

GARTH, Circuit Judge.

This appeal by General Glass Industries Corporation ("GGI") requires us to determine whether a complaint asserting causes of action, some of which are not derivative of the causes of action maintained by the intervenor, the Insurance Commissioner of the Commonwealth of Pennsylvania ("Commissioner") in state liquidation proceedings against an insolvent insurer, may be dismissed by the district court on the grounds of abstention pursuant to *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). We will vacate the district court's abstention order and remand to the district court to stay this action pending conclusion of the state court proceedings.

## I.

Keystone Medical Management Company, a named defendant in the action brought by GGI, had established a health care company, Keystone Medical Services, Inc., which had sold employee health insurance coverage to GGI in December, 1987. On September 4, 1990, the Commonwealth Court of Pennsylvania granted the petition of the Commissioner and issued an amended order for the liquidation of the insolvent Keystone Medical Services, Inc. In November, 1990, GGI filed a complaint in the United States District Court for the Western District of Pennsylvania, asserting RICO, ERISA and state tort law claims against Monsour Medical Foundation, Monsour Medical Center individually and as successor to Keystone Medical Management Company, William Monsour, M.D., and A.V. Papa, Jr.[1]

On February 20, 1991, and thereafter on March 27, 1991, first Monsour, and then the Commissioner who had been granted intervention, moved to dismiss the complaint of GGI, arguing that the district court should abstain from exercising its jurisdiction, so as not to interfere with the liquidation proceedings which were continuing in state court.

GGI opposed these motions on the grounds that abstention was not warranted because GGI's claims against Monsour were not derivative of the Commissioner's actions, and were not available to, and could not be prosecuted by, the Commissioner. The Commissioner, while arguing for abstention, nevertheless stated that it had no objection to a stay of the federal action pending resolution of the state court suit.

The district court referred the motions to dismiss to a Magistrate Judge for decision. After discussing abstention under both *Burford* and *Colorado River Conservation District v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), the Magistrate Judge recommended that the motions to dismiss be granted on the basis of *Burford* abstention, fearing that if the plaintiff's action were allowed to continue, it would disrupt the ongoing state court liquidation proceedings.[2] Those pro-

---

1. For ease of reference throughout this opinion, we will refer to all defendants as "Monsour."

2. Pursuant to the statutory liquidation procedures mandated by 40 Pa.Stat.Ann. §§ 221.1–221.63 (Supp.1991), Keystone's assets, liabilities, and any causes of action, were placed in the hands of the Commissioner. As part of her

actions to recover receivables and all monies diverted by defendants from the insolvent insurer, the Commissioner filed a complaint in the Commonwealth Court of Pennsylvania (No. 308 M.D.1989) against the defendants alleging common law fraud and negligence. The Commissioner sought to recover premium payments

ceedings involve the acquisition, marshalling, and distribution of assets of the insolvent insurer, Keystone Medical Services, Inc. ("KMS"). The Magistrate Judge held that these same assets were the subject of GGI's complaint. On November 1, 1991, the district court granted the Commissioner's and Monsour's motions to dismiss based on the report and recommendation of the Magistrate Judge.[3] GGI filed a timely Notice of Appeal.

## II.

GGI is a manufacturer of sheet glass and employs approximately 300 workers. GGI had purchased employee health insurance from Keystone Medical Services, Inc. The complaint of GGI asserted claims under federal and state law. GGI alleged, among other claims, that the defendants had wasted KMS' assets, unlawfully converted health insurance premiums, and had breached fiduciary duties owing to employee welfare benefit plans of GGI. GGI also alleged that, by the time that liquidation of KMS was ordered, KMS had unpaid medical claims of $1.7 million, of which $250,000 had been incurred by GGI employees.

GGI's complaint also charged Monsour with various misrepresentations of fact. These misrepresentations, it is alleged, caused GGI to incur higher health insurance premium costs for the remainder of its contract with KMS, and also caused damage to GGI's reputation. It was alleged as well that GGI employees suffered damages by having to pay medical claims that should have been paid by KMS, and by having health insurance benefits decrease and premium contributions increase, in or-

der to pay for health benefits of a lesser quality.

The RICO and ERISA counts of GGI's complaint essentially stem from the activities of Monsour in its conduct of KMS' business. Similarly, the state law claims refer to the various intentional actions of Monsour which GGI contends resulted in the legal and equitable claims for which relief is sought.

The district court, adopting the Report and Recommendation of the Magistrate Judge, rejected the arguments for abstention based on *Colorado River* abstention. The district court recognized that GGI raised claims under ERISA, RICO and the Pennsylvania Unfair Trade Practices and Consumer Protection Law, that may not be raised by the Commissioner in state court proceedings[4], and thus the federal and state court proceedings were not truly duplicative as required for a district court to abstain under *Colorado River*. The district court held, however, that Monsour and the Commissioner had met the requirements for *Burford* abstention and thus dismissed GGI's complaint. It found that the regulation of an insolvent insurer and its rehabilitation presented the type of complex regulatory scheme, reflecting a policy of substantial state concern, which is among the prerequisites for *Burford* abstention.

Turning to other factors supporting *Burford* abstention, the district court contrasted GGI's claims with those presented by *University of Maryland v. Peat Marwick Main & Co.*, 923 F.2d 265 (3d Cir.1991), which the district court found "instructive since it sets forth a framework for determining when a suit poses a danger of inter-

converted from Keystone and monies improperly diverted from Keystone to related corporations.

3. GGI's complaint was brought as a class action, comprised of all employers who had contracted for health insurance benefits for their employees from KMS, and non-defendant employees who were beneficiaries of such plans. Although GGI moved for class certification, in light of the dismissal of its complaint, no decision on class certification was ever rendered.

4. The jurisdiction of the state courts extends to RICO claims. *See Tafflin v. Levitt*, 493 U.S. 455,

460, 110 S.Ct. 792, 795, 107 L.Ed.2d 887 (1990) (holding that "with respect to civil claims arising under RICO, we hold that state courts retain their presumptive authority to adjudicate such claims"). In this case, however, it is the policyholder, GGI, not the Commissioner, that has standing to bring a RICO action alleging predicate acts of fraud in the inducement to purchase insurance policies, because the injuries and hence the damages resulting from such activities cannot be claimed as the property of KMS' estate.

fering with a state's efforts to regulate matters of public concern." (A 263). In *Peat Marwick*, we reversed the decision of the district court to abstain under *Burford*. We held, among other things, that the claims against the independent auditor, which had certified financial statements of the insurer on which the insureds had relied to their detriment, did not threaten to disrupt the regulatory scheme at issue in the ongoing liquidation proceedings.

In *Peat Marwick*, the plaintiffs' claims were held to be non-derivative because they were brought against an auditor of the insurance company and were based on breaches of duty to the plaintiffs and not to the insolvent insurer, *id.* at 274. Although the district court conceded (A 267–68) that GGI had raised claims in federal court that could not be raised in the state proceeding, and GGI sought relief to which the Commissioner was not entitled[5], it also found that GGI was seeking the same funds pursued by the Commissioner. The district court, by adopting the Magistrate Judge's report, held that any funds improperly converted from KMS were part of the "estate" of KMS, and GGI's action would thus interfere with the ongoing state proceedings. It concluded, therefore, that abstention was appropriate and dismissed GGI's complaint.

The Magistrate Judge, in his opinion, reported that "[b]oth defendants and intervenor [Commissioner] argue in the alternative that this case should be stayed until such time as the state court liquidation is completed." (A 260).[6]

■ Because the district court dismissed GGI's complaint, we must take GGI's allegations to be true. *See Monaghan v. Deakins*, 798 F.2d 632 (3d Cir.1986), *aff'd*, 484 U.S. 193, 108 S.Ct. 523, 98 L.Ed.2d 529 (1988). We review the propriety of the district court's order which abstained from exercising jurisdiction to avoid interfering with state administrative proceedings, under a standard wherein "the underlying legal questions are subject to plenary review, although the decision to abstain is reviewed for abuse of discretion." *Peat Marwick*, 923 F.2d at 269.

### III.

In *Burford v. Sun Oil*, 319 U.S. 315, 332, 63 S.Ct. 1098, 1106, 87 L.Ed. 1424 (1943), the Supreme Court considered abstention appropriate where "questions of regulation of the industry ... so clearly involves [sic] basic problems of [state] policy that equitable discretion should be exercised to give the [state] courts the first opportunity to consider them." Burford had been granted a permit by the Texas Railroad Commission to drill four wells in an East Texas oil field. Sun Oil Company attacked the validity of the Commission's order. It did so in federal district court. The court, after discussing the complexities of the Texas regulatory system, under which the spacing of wells and the rights of separate owners to a share of the common oil reservoir is regulated, held that the federal courts should abstain, thereby declining to exercise their jurisdiction in such a case to avoid interruption, delay, and conflict with the operation of the state administrative scheme.

The abstention doctrine announced in *Burford* "limited interference by the lower federal courts in determinations of inherently local matters made by state courts pursuant to a complex state regulatory scheme." *Peat Marwick*, 923 F.2d at 270. In cases where "certain 'traditional abstention requirements'" are present, *id.* the

---

5. The Magistrate Judge's report, adopted by the district court, observed:

It should also be noted that, if plaintiff is entitled to greater relief based upon the claims which are raised herein, he may still obtain that relief after the conclusion of the state court proceedings. The attempt to raise these claims in the federal court, and a refusal on abstention grounds, should work as a tolling of any applicable statute of limitations. (A 268 n. 1)

6. On appeal, at oral argument, all parties were asked if they would unconditionally concede to vacating the district court's order of dismissal in light of their purported earlier lack of objection to a stay of the proceedings by the district court until such time as the state court liquidation proceedings had been concluded. Monsour's response was not unconditional, hence this opinion.

district court may exercise its discretion to abstain. The Supreme Court has summarized the requirements for *Burford* abstention thus:

> Where timely and adequate state court review is available, a federal court sitting in equity must decline to interfere with the proceedings and orders of state administrative agencies: (1) when there are "difficult questions of state law bearing upon public problems of substantial public import whose importance transcends the results in the case at bar"; or (2) where the "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern."

*New Orleans Public Service, Inc. v. Council of New Orleans*, 491 U.S. 350, 361, 109 S.Ct. 2506, 2514, 105 L.Ed.2d 298 (1989) (citation omitted).

Pursuant to the McCarran–Ferguson Act, 15 U.S.C. § 1012, Congress ensured that the power to regulate the insurance industry is vested in the states:

> No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, or which imposes a fee or tax upon such business, unless such Act specifically relates to the business of insurance

> .    .    .    .    .

■ Where the district court's exercise of jurisdiction would interfere with ongoing proceedings pursuant to a state regulatory scheme, such as a regulatory scheme concerning the insurance industry, the district court, under a *Burford* analysis, may abstain. Pennsylvania has expressed its strong state interest in regulating insurance companies through a complex regulatory scheme, known as the Insurance Department Act, 40 Pa.Cons.Stat.Ann. § 1 et seq., the stated purpose of which is "the protection of the interests of insureds, creditors, and the public generally." This purpose is effected through "regulation of the insurance business by procedures and substantive rules on the entire insurance business," early detection of troubled insurers, with prompt corrective remedial measures, and "efficiency and economy of liquidation" where necessary. *See* 40 Pa. Cons.Stat.Ann. § 221.1(c). "Generally, *Burford* abstention is justified where a complex regulatory scheme is administered by a specialized state tribunal having exclusive jurisdiction." *United Services Automobile Ass'n v. Muir*, 792 F.2d 356, 364 (3d Cir.1986), *cert. denied*, 479 U.S. 1031, 107 S.Ct. 875, 93 L.Ed.2d 830 (1987).

■ Even in the face of liquidation proceedings instituted against an insolvent insurer pursuant to a regulatory scheme such as Pennsylvania's, the decision of a district court to abstain remains within the district court's discretion. In *Lac D'Amiante Du Quebec v. American Home Assurance Co.*, 864 F.2d 1033, 1047 (3d Cir. 1988), we refused to

> lay down a per se rule that district courts must always abstain from an action against an insurance company the instant a state court places the company in liquidation proceedings. The decision as to whether abstention is appropriate may require an inquiry into the facts of the specific case before the court.

In *Lac D'Amiante*, 864 F.2d at 1045, we observed that the states have a strong interest in regulation of the insurance industry because

> ... solvent and healthy insurance coverage is an essential state concern. The McCarran–Ferguson Act specifically provides that it is in the public interest for states to continue serving their traditional role in the federal system and indicates the special status of insurance in the realm of state sovereignty.

In that case, a seller of asbestos sought indemnity from its insurers for sums it had paid out in connection with asbestos-related claims. The defendant insurers were in liquidation proceedings pursuant to the New York regulatory scheme with the New York Superintendent of Insurance as the statutory receiver. We noted "that most courts that have discussed this question have held abstention or stay or dismissal appropriate in the circumstance of a suit

against an insurer in liquidation proceedings." *Id.*

In *Lac D'Amiante*, we reversed the district court's decision not to abstain, holding that the facts of the record in *Lac D'Amiante* clearly indicated that "assumption of jurisdiction by the federal court in a suit against an insolvent insurer in liquidation proceedings would be highly destructive of the state's regulatory scheme." *Id.* at 1045. In *Peat Marwick*, we recognized similar concerns, even though we held that claims against Peat Marwick did not involve Pennsylvania's regulation of insurance companies. We "assume[d], without deciding, that regulation of insolvency and rehabilitation proceedings of insurance companies can provide the 'complex regulatory scheme' or 'coherent policy with respect to a matter of substantial public concern' that are among the prerequisites for invoking *Burford* abstention." 923 F.2d at 270 n. 6.

In *Peat Marwick*, we examined the appropriate conditions for *Burford* abstention when deciding an action for damages against an insurance company's independent auditor. The defendant auditor, Peat Marwick, and the intervenor Commissioner both filed motions to dismiss the federal action. The district court granted the Commissioner's motion to dismiss on the grounds that it should abstain under *Burford*.[7] We reversed the decision of the district court, holding that abstention was not justified in such a case, because "Pennsylvania's regulatory scheme governing insurance company insolvencies is not concerned with protecting auditors" 923 F.2d at 272, and thus Peat Marwick's "connection to the state regulatory mechanism (governing insolvency proceedings) that *Burford* abstention is designed to protect [was] simply too attenuated." 923 F.2d at 271. We noted that *"Burford* abstention may be ordered in insurer insolvency cases only where one of the parties to the action in which the federal court abstains is the insolvent insurer or its receiver, trustee, officers, and the like." *Id.*

**A.**

As an initial matter, GGI argued that abstention was inappropriate because its complaint seeks money damages at law and GGI argues that a federal court can only abstain under a *Burford* analysis when considering a claim for equitable relief.

In *Lac D'Amiante*, 864 F.2d at 1045, we reviewed Supreme Court cases discussing abstention and stated that "these cases suggest that the distinction between legal and equitable relief is no longer important in the abstention context...." However, *Lac D'Amiante* itself addressed a claim for declaratory, not monetary, relief. On the other hand, the Supreme Court in *Tafflin v. Levitt*, 493 U.S. 455, 110 S.Ct. 792, 107 L.Ed.2d 887 (1990), affirmed a decision to abstain under *Burford*, in a case involving RICO claims for money damages. *But see Peat Marwick*, 923 F.2d at 272 (intimating that *Burford* abstention should not be extended beyond equitable claims).

Decisional authority remains inconclusive as to whether *Burford* abstention may be ordered *only* in cases of an equitable nature, or whether, as *Lac D'Amiante* states in dictum, the distinction between legal and equitable relief is not dispositive in abstention cases. Hence, we are hesitant to sustain GGI's claim that the district court's abstention order should be reversed, relying solely on the ground that GGI seeks money damages, rather than either declaratory or injunctive relief.

**B.**

█ GGI also contends that its claims against Monsour are not derivative of the Commissioner's action, but are rather claims resulting from breaches of duties owed to GGI by Monsour. GGI points out that its claims are beyond the scope of the Commissioner's action, arguing, for example, that even if the Commissioner had standing to pursue a RICO claim, the nature of the Commissioner's claim and the

---

**7.** Peat Marwick's motion to dismiss was not decided by the district court, in light of the

district court's order granting the Commissioner's motion to abstain. 923 F.2d at 267 n. 2.

relief that the Commissioner could obtain is vastly different.[8]

In sum, GGI charges that the Commissioner is not seeking, and cannot seek, damages sufficient to make GGI and members of its putative class whole for the injuries that they have suffered by reason of Monsour's actions. Thus, GGI concludes that, because its claims are materially different from the Commissioner's and because its claims are non-derivative[9], the relief which it seeks cannot be satisfied by the Commissioner's state court proceeding.[10]

On the other hand, the Commissioner argues that GGI's claims are derivative of the Commissioner's claims and are the same as those of other KMS-insured claimants on whose behalf the Commissioner is seeking recovery in the liquidation proceedings. Thus, the Commissioner would have us sustain the district court's abstention order because, as the Commissioner argues, the policies underlying the Pennsylvania insurance regulatory scheme would be frustrated if the district court permitted interference with the state court liquidation proceedings.

We are satisfied that there are differences between the claims asserted by GGI and those available to the Commissioner. *See Kelly v. Overseas Investors, Inc.*, 18 N.Y.2d 622, 272 N.Y.S.2d 773, 219 N.E.2d 288 (1966) (per curiam) (Insurance Commissioner has no standing under Pennsylvania law to assert the creditors' claims against Defendants who misrepresented company's assets); *Kinter v. Connolly*, 233 Pa. 5, 81 A. 905 (1911) (receiver of insolvent insurance company cannot assert the creditors' claims concerning the misrepresentation of company's assets that induced the creditors to do business with the company).

We are also satisfied that some of the claims of GGI overlap and are derivative of the claims which the Commissioner is asserting in its state court proceeding. However, we are mindful as well that we should not permit interference in the marshalling of KMS' assets and that the Commissioner, in the discharge of her duties, should not experience disruption by parallel court actions. Those concerns, because of the nature of GGI's claims which have yet to be tested at trial, are not entirely resolved either by the principles of *Lac D'Amiante*, which ordered abstention, or by the principles of *Peat Marwick*, which did not.

In order to give effect to the teachings of *Burford*, which require that the Commissioner be allowed to conduct her state court liquidation proceedings without interference, we hold that the district court's discretion was properly exercised by granting *Burford* abstention. We do so, however, only to the extent that GGI's claims dovetail with, or parallel, those of the Commissioner. To the extent that GGI has assert-

---

**8.** GGI posits:

> Even if the Insurance Commissioner has standing to assert a RICO claim against Defendants for injuries resulting to Keystone Medical from the unlawful conversion of premium funds, any such claim would be substantially different from the one asserted by GGI in this case. GGI alleges that Defendants engaged in a pattern of racketeering activity arising out of both predicate acts of mail fraud and unlawful conversion of the assets of an employee welfare benefit plan. While the Insurance Commissioner, standing in the shoes of Keystone Medical, might predicate a RICO claim upon the unlawful conversion of premium funds, she would be estopped from relying upon Defendant's fraudulent solicitation of premiums inuring to the benefit of Keystone Medical. *See Cenco, Inc. v. Seidman & Seidman*, 686 F.2d 449, Fed.Sec.L.Rep. p. 98615 (7th Cir.1982), *cert. denied*, 459 U.S. 880, 103 S.Ct. 117 [177, 74 L.Ed.2d 145] (1982).

Appellant's Brief at 13 n. 1.

**9.** We have determined that a claim is derivative if the injury alleged by the plaintiffs is

> "primarily to the corporation, and is an injury to the plaintiff creditor insofar as it decreases the assets of the corporation to which he must look for satisfaction of his debt, then the suit is for a tort suffered by the corporation, and properly brought by the trustee."

*Peat Marwick*, 923 F.2d at 273, quoting *In re Western World Funding, Inc.* 52 B.R. 743, 775 (Bankr.D.Nev.1985).

**10.** The district court acknowledged that the damages sought by GGI exceed the damages sought by the Commissioner and that "the claims presented [by GGI] differ from those in the state court proceeding in that here plaintiff seeks to vindicate the rights of a policyholder, and does not seek recovery on behalf of KMS." (A 264).

ed claims which are broader than, and different from, the Commissioner's, we hold that the district court improperly exercised its discretion by dismissing GGI's action.

We are not called upon here to either identify in detail the particular claims that are broader than, or different from, the Commissioner's, nor would it be appropriate for us to attempt to identify the parallel claims which GGI and the Commissioner have asserted and which they share. Rather, we will, while sustaining the exercise of *Burford* abstention, vacate so much of the district court's order dismissing GGI's action and provide that, after the state proceedings have been concluded, GGI may, if it desires to pursue any or all of the claims not satisfied through the Commissioner's liquidation proceedings, prosecute them in the district court.

This disposition will preserve GGI's claims and will permit GGI, after conclusion of the state proceedings, to specify and evaluate those claims for which relief was not found available in the liquidation action, and to seek redress for such claims in federal court. GGI may then pursue those remaining claims, if any, without having impaired or interfered with the Commissioner's actions in her liquidation proceedings.

In structuring our present holding, we have been influenced to a degree by our earlier decision in *Williams v. Red Bank Bd. of Educ.*, 662 F.2d 1008 (3d Cir.1981). In *Williams*, we affirmed an order of abstention under the doctrine of *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). The district court had dismissed a suit brought under 42 U.S.C. § 1983 by Williams, a teacher who claimed tenure and damages and contended that the filing of administrative charges against her for her behavior in the classroom and at a public meeting of the Board of Education, had violated her constitutional rights. We held that the district court was correct in abstaining in the face of the ongoing state administrative tenure proceeding. However, due to uncertainty as to the relief which Williams might be afforded, and the possibility that claims

which Williams might not be able to pursue in the state proceeding might be lost, we directed that a stay, rather than a dismissal of the federal proceedings, be ordered so that Williams' federal claims might be pursued, if any remained, after the completion of the state proceedings.

Our action in *Williams*, was followed by a similar action in *Monaghan v. Deakins*, 798 F.2d 632 (3d Cir.1986), *aff'd*, 484 U.S. 193, 108 S.Ct. 523, 98 L.Ed.2d 529 (1988). In *Deakins*, officers of the Division of Criminal Justice in New Jersey had seized the plaintiffs' papers and records after a search of the premises of the plaintiffs' corporation. The plaintiffs thereafter filed a complaint pursuant to 42 U.S.C. § 1983, in the District Court for the District of New Jersey, charging that the search was unlawful and seeking damages and a preliminary injunction which would return all the seized documents. The defendant officials moved to dismiss the plaintiffs' complaint, contending that the district court should abstain because of the then ongoing state (grand jury) proceedings. The district court held that abstention was appropriate and dismissed the complaint, having also held that it would not issue an injunction. On appeal, we affirmed the denial of the preliminary injunction, but also held that the district court had erred in dismissing plaintiffs' claim for money damages and attorneys' fees, stating,

> it is settled in this circuit that a district court, when abstaining from adjudicating a claim for injunctive relief, should stay and not dismiss accompanying claims for damages and attorney fees when such relief is not available from the ongoing state proceedings.

*Deakins*, 798 F.2d at 635.

Thus at the same time that we approved the district court's abstention order, we directed that the district court stay the plaintiffs' federal claims that could not be vindicated in the state proceeding. That decision was affirmed by the Supreme Court, stating,

> ... even if the *Younger* doctrine requires abstention here, the District Court has no discretion to dismiss rather than

. to stay claims for monetary relief that cannot be redressed in the state proceeding.

*Deakins v. Monaghan*, 484 U.S. 193, 202, 108 S.Ct. 523, 529, 98 L.Ed.2d 529 (1988).

The Court specifically referred to our *Williams* decision when it said:

> In reversing the District Court's dismissal of the claims for damages and attorney's fees, the Court of Appeals applied the Third Circuit rule that requires a District Court to stay rather than dismiss claims that are not cognizable in the parallel state proceeding. 798 F.2d, at 635, citing *Crane v. Fauver*, 762 F.2d 325 (1985) and *Williams v. Red Bank Bd. of Ed.*, 662 F.2d 1008 (1981). The Third Circuit rule is sound. It allows a parallel state proceeding to go forward without interference from its federal sibling, while enforcing the duty of federal courts "to assume jurisdiction where jurisdiction properly exists." *Id.* at 1024.

*Id.* at 202–03, 108 S.Ct. at 529–30.

Thus, the principles of *Burford*, informed by the instruction of *Williams* and *Deakins*, lead us to conclude that the district court's order of *Burford* abstention should be sustained, but that GGI's complaint should not be dismissed. Rather, the district court should have permitted the parallel state proceeding to go forward while retaining jurisdiction over GGI's action, in order to be certain that non-parallel and non-derivative claims, as well as claims peculiar to GGI alone, might thereafter be prosecuted.

## C.

Our disposition, in affirming abstention, but requiring that the district court retain jurisdiction also avoids the troublesome question of whether any of the claims in GGI's complaint would be barred by an applicable statute of limitations defense.

The district court was evidently satisfied that no limitations bar would prevent GGI from pursuing claims that were not vindicated by the Commissioner's state court proceedings. Yet, we have held in *Bailey v. Ness*, 733 F.2d 279 (3d Cir.1984), that even a dismissal without prejudice does not protect against statute of limitations defenses. In *Bailey, id.* at 283, we said:

> A dismissal of a party's suit, even without prejudice, simply does not protect the party from a statute of limitations problem should the state court proceedings take a long time. The possibility warrants a safeguarding of a party's interest in being able to bring suit. Consequently, we believe that under such circumstances it is improper to dismiss a party's claims; a proper course would be to stay the federal court proceedings until the state court proceedings have run their course or have run out of time in which to be brought.

Similarly in *Williams*, 662 F.2d at 1024 n. 16, we held that the district court should have stayed the federal proceeding so that there was "no possibility of a statute of limitations bar to Williams' claim, other than may have existed at the time her complaint was filed." Moreover, in *Deakins v. Monaghan*, 484 U.S. 193, 202, 108 S.Ct. 523, 529, 98 L.Ed.2d 529 (1988), the Supreme Court discussed with approval our decisions concerning the necessity of retaining jurisdiction in the context of abstention under *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). The limitation concern addressed in *Deakins* but pertaining to *Younger* is equally applicable here:

> In both *Crane v. Fauver*, 762 F.2d, at 329, and *Williams v. Red Bank Bd. of Educ.*, 662 F.2d at 1024, n. 16, the Court of Appeals recognized that unless it retained jurisdiction during the state proceeding, a plaintiff could be barred permanently from asserting his claims in the federal forum by the running of the applicable statute of limitations.

484 U.S. at 203 n. 7, 108 S.Ct. at 530 n. 7.

## IV

We will affirm the district court's *Burford* abstention order, thereby enabling the Commissioner's state court action to proceed without interference. At the same time we will vacate the district court's order which dismissed GGI's complaint and

will remand to the district court with the direction that the district court retain jurisdiction over GGI's complaint and stay GGI's action until the conclusion of the Commissioner's state court action. At that time, if issues remain, which have not been satisfied in the state court action, the district court should, consistent with the foregoing opinion, conduct such further proceedings as may be required.

Each party will bear its own costs.