896 F.Supp. 428 (1995)
Frederic RICHARDSON, Theodore R. Nering, Emil J. Molin
v.
LLOYDS OF LONDON.
Civ. A. No. 95-4174.
United States District Court, E.D. Pennsylvania.
August 9, 1995.
*429 G. Alexander Bochetto, Bochetto and Lentz, P.C., Philadelphia, PA, Walter Weir, Jr., Patterson & Weir, Philadelphia, PA, Joseph M. Fioravanti, Media, PA, for plaintiffs.
Michele Daniele, Harvey, Pennington, Herting and Renneisen, Ltd., Philadelphia, PA, for defendant.
Jerome J. Shestack, Wolf, Block, Schorr and Soliscohen, Philadelphia, PA, for intervenor-plaintiff.

MEMORANDUM
BARTLE, District Judge.
This action involves a dispute over more than $1 million available under a Lloyds of London ("Lloyds") Directors and Officers Liability insurance policy. Plaintiffs Frederic Richardson ("Richardson"), Theodore R. Nering ("Nering"), and Emil J. Molin ("Molin"), former officers and directors of Corporate Life Insurance Company ("CLIC"), seek a declaratory judgment and injunctive relief. They ask this court to compel Lloyds to continue to pay their counsel's fees in connection with the defense of a fraud action that the Pennsylvania Insurance Commissioner as Statutory Liquidator of CLIC ("Commissioner") instituted against them in the Commonwealth Court of Pennsylvania.[1]Insurance Comm'r of Pa. v. Molin, No. 2 MD 1995 (Pa.Commw.).
The court held a preliminary injunction hearing on July 10, 1995. At the hearing, the court permitted the Commissioner to intervene for the purpose of seeking to have this court abstain from adjudicating this action. The motion for a preliminary injunction as well as the Commissioner's motion to abstain are now before the court for decision. For the following reasons, the court will grant the Commissioner's motion to abstain and dismiss the complaint.
To understand this current action, it is necessary to go back in history several years. For purposes of the Commissioner's motion, the court will accept as true various factual allegations in plaintiffs' complaint. The recited facts also include certain facts established at the preliminary injunction hearing as well as some facts of which the court has taken judicial notice.
On March 31, 1992, the Commissioner filed a petition in the Commonwealth Court of Pennsylvania, Chronister v. Corporate Life Insurance Company, No. 142 M.D.1992 (Pa. Commw.), to liquidate CLIC because of alleged insolvency. See 40 Pa.Stat.Ann. § 221.20. In late 1992, while this petition was pending, the Pennsylvania Insurance Department demanded that CLIC raise the number of directors from one to seven in accordance with Pennsylvania law. See 15 Pa.Cons.Stat.Ann. § 3131(b). Richardson, president of CLIC at that time, reported that he could not find people to serve on the board of directors without a Directors and Officers Liability policy in place. Lloyds issued a Directors and Officers insurance policy in January, 1993 to American Homestead, Inc. ("AHI"), a parent of CLIC, for AHI's and CLIC's officers and directors. At this time, CLIC found additional officers and directors, including plaintiffs Nering and Molin. The policy, which cost approximately $1.2 million,[2] has a limit of liability of $1.5 million. The policy covers officers and directors for losses, which are defined as "damages, settlements, and Costs, Charges, and Expenses." Costs, charges, and expenses are defined as "reasonable and necessary legal fees and expenses incurred by the Directors and Officers in the defense of any Claim." Paragraph E of Section IV entitled "Limit of Liability and Retentions" provides that "Costs, Charges and Expenses shall be part of and not in addition to the Limit of Liability as shown under Item C of the Declarations, and such Costs, Charges, and Expenses shall reduce the Limit of Liability as *430 shown under Item C of the Declarations." Thus, unlike garden variety liability insurance policies, it appears that legal fees are counted against the amount available for the payment of claims.
The Commissioner withdrew the 1992 liquidation petition on March 30, 1993. However, she filed a second liquidation petition on June 4, 1993 in the Commonwealth Court. Maleski v. Corporate Life Ins. Co., No. 175 M.D.1993 (Pa.Commw.). On February 15, 1994, the Commonwealth Court found CLIC insolvent and ordered its liquidation pursuant to 40 Pa.Stat.Ann. § 221.20. Maleski, No. 175 M.D.1993. The court appointed the Commissioner as Statutory Liquidator in accordance with Pennsylvania insurance law. See 40 Pa.Stat.Ann. § 221.20(c).
Over a year later, on June 8, 1995, the Commissioner, as Statutory Liquidator, filed a complaint, consuming some 55 pages, in the Commonwealth Court[3] against Richardson, Nering, and Molin. She alleges that they had engaged in intentional, fraudulent, and negligent conduct that caused CLIC "to suffer millions of dollars of losses, leading to its ultimate failure and collapse, all to the detriment of its policyholders, its creditors, and the public." Insurance Comm'r of Pa., ¶ 1. Additionally, the Commissioner asserts in the complaint that "[t]hrough a series of transactions that concealed Corporate Life's true financial condition, and that benefited the defendants [Richardson, Nering, and Molin] personally, the defendants [Richardson, Nering, and Molin] were successful in permitting Corporate life to continue operations when Corporate Life was, in fact, insolvent." Insurance Comm'r of Pa., ¶ 18.
With respect to the Lloyds policy in issue, the Commissioner maintains that its purchase constituted a fraudulent transfer of assets of CLIC in violation of Pennsylvania insurance law. See 40 Pa.Stat.Ann. § 221.29.[4] Specifically, her complaint alleges that "[d]efendants [Richardson, Nering, and Molin] caused Corporate Life to purchase this policy solely in an effort to insulate themselves from the personal liability that they knew they were facing by their willful misconduct or gross negligence." Insurance Comm'r of Pa., ¶ 252. The complaint further contends that the "defendants [Richardson, Nering, and Molin] caused Corporate Life to purchase the policy at a time they knew or should have known Corporate Life was insolvent." Insurance Comm'r of Pa., ¶ 253.
After the commencement of this and several other lawsuits against officers and directors of CLIC, Lloyds began to pay defense counsel out of the funds available under the policy pursuant to an interim funding agreement for defense fees and costs. However, the agreement provided that "[a]ny party to this Agreement may, upon thirty (30) days written notice, cancel this Agreement for any reason related to or arising out of that party's rights, remedies, or defenses under the Policy or applicable law." Lloyds notified Richardson's counsel by letter on June 30, 1995 that it was exercising its rights "to cancel [certain] ... funding agreements" because Lloyds was facing competing demands for a limited amount of assets. Lloyds sent this letter following a settlement demand made by another CLIC former officer, Barry Feldman ("Feldman"). In the letter, Lloyds reported Richardson's warning that he would consider any settlement with Feldman to be in bad faith and in violation of his rights under the policy. Feldman's demand, if paid, would consume most if not all of the funds available under the policy. Given this demand as well as competing claims of various former CLIC directors, Lloyds concluded that it had to "request the assistance *431 of the court in determining how the proceeds of the Policy must be disbursed."
In sum, the plaintiffs seek to have Lloyds continue to pay their counsel fees in defense of the Commissioner's Commonwealth Court action pending against them. Without these monies, they claim they cannot afford to defend that complex action. The Commissioner, on the other hand, wants to recover the amount held by Lloyds for the benefit of the policyholders and creditors of CLIC on the ground that the purchase of the Lloyds policy was a fraudulent transfer under Pennsylvania insurance law. 40 Pa.Stat. Ann. § 221.29. Lloyds, for its part, has advised the court that it is a mere stakeholder and expected to file a complaint of interpleader with the Commonwealth Court. It did so on July 26, 1995. Anglo-American Ins. Co. v. Molin, No. 331 MD 1995 (Pa. Commw.). As part of its interpleader, it asks leave to deposit the money available under the policy into the registry of the court.
The Commissioner argues that this court should abstain from deciding this federal court action. She contends that we should do so pursuant to Burford v. Sun Oil Co., 319 U.S. 315, 334, 63 S.Ct. 1098, 1107, 87 L.Ed. 1424 (1943) because this action is inextricably enmeshed with her liquidation of CLIC and Pennsylvania's regulation of insolvent insurance companies. As the Court of Appeals for the Third Circuit has explained, abstention under Burford is appropriate "where a state creates a complex regulatory scheme, supervised by the state court and central to state interests" if "federal jurisdiction deals primarily with state law issues and will disrupt a state's efforts to establish a coherent policy with respect to a matter of substantial public concern." Lac D'Amiante du Quebec v. American Home Assurance Co., 864 F.2d 1033, 1043 (3d Cir.1988) (quotation omitted).
In a more recent case, the Supreme Court has explained the exact contours of Burford abstention:
[w]here timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar; or (2) where the exercise of federal review of the question in the case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.
New Orleans Public Serv., Inc. v. Council of New Orleans, 491 U.S. 350, 361, 109 S.Ct. 2506, 2514, 105 L.Ed.2d 298 (1989) ("NOPSI") (quotation omitted).
Thus, we must first determine whether timely and adequate state-court review is available. Richardson argues that this element of Burford abstention is not present in this case because the Commonwealth Court does not have jurisdiction to entertain plaintiffs' claims. Whether or not that court has original jurisdiction over this action pursuant to 42 Pa.Cons.Stat.Ann. § 761(a),[5] it has ancillary jurisdiction pursuant to 42 Pa.Cons. Stat.Ann. § 761(c). See Reider v. Commonwealth of Pa., Bureau of Correction, 93 Pa. Cmwlth. 326, 502 A.2d 272, 274 (1985); Madden v. Jeffes, 85 Pa.Cmwlth. 414, 482 A.2d 1162, 1165 (1984). That statute provides in pertinent part that "[t]o the extent prescribed by general rule the Commonwealth Court shall have ancillary jurisdiction over any claim or other matter which is related to a claim or other matter otherwise within its jurisdiction." This federal suit brought by Richardson, Nering, and Molin, former officers and directors of CLIC, seeking a declaratory *432 judgment and injunctive relief is clearly related to the Insurance Commissioner of Pennsylvania action pending in the Commonwealth Court against them and to the interpleader suit recently filed in that court by Lloyds, Anglo-American Ins. Co. All three suits involve the issue of competing claims for the same CLIC asset  the Lloyds policy. Moreover, Richardson admits that Pennsylvania Courts of Common Pleas do have jurisdiction, even though he argues that such courts have no better expertise and are no better equipped than this court to address the issues involved. However, Burford abstention does not require that a state court be better equipped or have more expertise than the federal court. Rather, timely and adequate state-court review is all that is necessary. NOPSI, 491 U.S. at 361, 109 S.Ct. at 2514.
The next issue for the court in deciding whether Burford abstention is appropriate is whether "the exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." NOPSI, 491 U.S. at 361, 109 S.Ct. at 2514 (quotation omitted). The Commissioner argues that abstention is necessary to avoid disruption of the orderly liquidation of CLIC and to avoid interference with the marshalling of CLIC's assets. She maintains that the proceeds of the Lloyds policy constitute one of the largest liquid assets of CLIC. Pennsylvania, like other states, has plenary authority over the regulation of the business of insurance within its borders. 15 U.S.C. § 1012(a); Union Labor Life Ins. Co. v. Pireno, 458 U.S. 119, 129, 102 S.Ct. 3002, 3008, 73 L.Ed.2d 647 (1982) (citation omitted); Group Life & Health Ins. v. Royal Drug Co., 440 U.S. 205, 217-18, 99 S.Ct. 1067, 1076-77, 59 L.Ed.2d 261 (1979). This includes the regulation of insurance companies and oversight of insurance company insolvencies. Pennsylvania has a complex statutory scheme to deal with the insolvency and liquidation of such companies. 40 Pa.Stat.Ann. §§ 211-221.63. In fact, the federal bankruptcy code specifically exempts domestic insurance companies, such as CLIC, from liquidation bankruptcies. 11 U.S.C. § 109.[6]
The Court of Appeals for the Third Circuit expounded on the propriety of Burford abstention in General Glass Industries Corp. v. Monsour Medical Foundation, 973 F.2d 197 (3d Cir.1992). There, plaintiff had sued several defendants alleging RICO, ERISA, and state tort claims. Id. at 198. Subsequently, the Commissioner issued an order for the liquidation of one of the defendants, a health care insurer. Id. That defendant as well as the Commissioner then moved for the federal court to abstain. Id. In analyzing the issue, the Court of Appeals stated that "we should not permit interference in the marshalling of KMS' [the defendant's] assets and that the Commissioner, in the discharge of her duties, should not experience disruption by parallel court actions." Id. at 203. The court upheld the district court's abstention order to the extent that plaintiff's claims "dovetail with, or parallel, those of the Commissioner" but improper for plaintiff's claims that were broader or different from the Commissioner's claims. Id. at 203-04.
Here, we believe that the claims in this suit are not different from but rather "dovetail with" the Commissioner's claims. In fact, they are but different sides of the same coin. The Commissioner is presiding over the liquidation of CLIC, an insolvent insurance company. In this capacity, she is attempting to recover assets for the insolvent estate. As part of the effort, she has sued Richardson, Nering, and Molin for fraud and seeks to recover monies available under the Lloyds policy. Richardson, Nering, and Molin also seek in this court the benefit of the same asset to defend against the Commissioner's suit.
A later Court of Appeals decision further supports the Commissioner's position. In *433 University of Maryland v. Peat Marwick Main & Co., 923 F.2d 265, 267 (3d Cir.1991), policyholders of an insolvent insurance company instituted a class action against the insurance company's independent auditor. They claimed the auditor falsely certified the insurer's financial statements. Id. While the Court of Appeals found that Burford abstention was improper, it did so because the defendant in the suit, the independent auditor, was a third party whose connection to the state regulatory mechanisms was too attenuated to permit the federal court to renounce its obligation to exercise its jurisdiction. Id. at 271. The Court of Appeals made it clear that "Burford abstention may be ordered in insurer insolvency cases only when one of the parties to the action in which the federal court abstains is the insolvent insurer or its receiver, trustee, officers, and the like." Id. In this case, unlike the University of Maryland case, officers and directors of the insolvent insurer are parties.
Richardson argues that no conflict exists between this action and the liquidation proceedings in the Commonwealth Court. He cites a recent decision of the Court of Appeals for the Third Circuit as supporting his argument, Riley v. Simmons, 45 F.3d 764 (3d Cir.1995). That case concerned alleged violations of the federal securities law by officers and directors of a life insurance company which had previously been placed in rehabilitation. Id. at 766-69. The Securities and Exchange Act, however, required the securities claims to be heard exclusively by the federal courts. Id. at 773. The officers and directors then moved for abstention, which the district court granted. Id. at 769-70. Although the Court of Appeals noted its concern about interference with the Commissioner's ability to marshall assets, it explained that such interference does not excuse the Burford requirement that timely and adequate state-court review be available. Id. at 776-77. Specifically, the Court of Appeals concluded:
[t]he Commissioner's argument may support a conclusion that continuation of the federal action is likely to disrupt state efforts to establish a coherent policy with respect to a matter of substantial public concern, but as we have stated throughout this opinion, this is insufficient to justify Burford abstention when there is no opportunity for timely and adequate state court review of Plaintiff's claims.
Id. at 777 (quotations omitted).
We believe that these Court of Appeals decisions permit this court to abstain. The appellate court has recognized that federal courts should not interfere in the marshalling of an insolvent insurer's assets and that abstention is proper if plaintiff's claims dovetail or parallel those of the Commissioner. General Glass Indus. Corp., 973 F.2d at 203. If this court permitted this suit to go forward, the Commissioner would be severely impeded in her attempts to gather the assets of CLIC and to proceed with an orderly liquidation. Additionally, Lloyds has filed a complaint of interpleader in the Commonwealth Court. That complaint seeks to have that court determine the rights of the various parties to the policy proceeds and to enjoin the parties from instituting or prosecuting any action against Lloyds affecting payments made under the policy. As we have noted, both plaintiffs and the Commissioner are seeking the very same asset  the Lloyds policy. Here, there are competing interests for the same dollars. Significant state policy is involved in deciding whether CLIC's officers and directors should be permitted to use proceeds of a policy allegedly obtained by fraud when use of such funds could deplete the amount of money available to pay policyholders and creditors of an insolvent insurance company. In such a situation, where timely and adequate state-court review is available and federal court review would disrupt state efforts to establish a coherent and important state policy on insurance liquidation, abstention is proper.
In this suit, plaintiffs seek a declaratory judgment as well as injunctive relief. Our conclusion that abstention is proper in this suit is bolstered by a recent Supreme Court decision addressing district courts' discretion in declaratory judgment actions. In Wilton v. Seven Falls Co., ___ U.S. ___, ___, 115 S.Ct. 2137, 2143, 132 L.Ed.2d 214 (1995), the Supreme Court held that a district court may stay or dismiss a declaratory judgment suit *434 before trial as this remedy is nonobligatory. Moreover, the Supreme Court noted that "where the basis for declining to proceed is the pendency of a state proceeding, a stay will often be the preferable course." Id. at ___ n. 2, 115 S.Ct. at 2143 n. 2.
Although abstention has been limited to cases involving equity jurisdiction, the Court of Appeals for the Third Circuit has found Burford abstention to be proper in cases seeking declaratory relief even if such relief is not within the traditional boundaries of equity jurisdiction. Lac D'Amiante du Quebec, 864 F.2d at 1044-45. A subsequent Court of Appeals decision casts doubt on the availability of Burford abstention in cases seeking legal relief but appears to uphold the propriety of such abstention in cases seeking declaratory relief because such relief is quite similar to injunctive relief. University of Md., 923 F.2d at 272. Thus, abstention is permissible in this suit because equity jurisdiction rather than legal relief is sought. Moreover, to the extent that a declaratory judgment is not within equity jurisdiction, the Wilton case supports this court's decision to abstain.
Accordingly, this court will grant the motion to abstain. Since the motion will be granted, there is no need to reach questions involving interpretation of the policy or other issues raised by plaintiffs. This action will be dismissed as "dismissal of the action, rather than retention of jurisdiction pending a state determination is normally appropriate." Baltimore Bank for Cooperatives v. Farmers Cheese Cooperative, 583 F.2d 104, 108 (3d Cir.1978) (quotation omitted).
NOTES
[1] Richardson also seeks to enjoin Lloyds from repudiating an interim funding in which Lloyds agreed to fund Richardson's defense costs in three other suits. Additionally, plaintiffs ask that this court declare that Lloyds' duty to indemnify and/or settle on their behalf is separate from its duty to defend or provide a defense for plaintiffs.
[2] Kevin Berry, a former lawyer for CLIC, testified that the $1.2 million included commissions to brokers and that the amount paid to Lloyds was about $1 million. However, the Lloyds policy recites that the deposit premium is $1.2 million.
[3] The Commissioner actually instituted this action by writ of summons in December, 1994. See Pa.R.Civ.P. 1007(1).
[4] Section 221.29(a) provides in part that:

[a]fter a petition for rehabilitation or liquidation a transfer of any of the real property of the insurer made to a person acting in good faith shall be valid against the receiver if made for a present fair equivalent value, or, if not made for a present fair equivalent value, then to the extent of the present consideration actually paid therefor, for which amount the transferee shall have a lien on the property so transferred.
Section 221.29(b)(3) provides that:
[a] person having actual knowledge of the pending rehabilitation or liquidation shall be deemed not to act in good faith.
[5] Section 761(a) provides in pertinent part that:

(a) General Rule.  The Commonwealth Court shall have original jurisdiction of all civil actions or proceedings:
(1) Against the Commonwealth government, including any officer thereof, acting in his official capacity, except: ....
(2) By the Commonwealth government, including any officer thereof, acting in his official capacity, except eminent domain proceedings.
(3) Arising under article V of the act of May 17, 1921 (P.L. 789, No. 285), known as "The Insurance Department Act of 1921."
(4) Original jurisdiction of which is vested in the Commonwealth Court by any statute hereafter enacted.
[6] Section 109 provides in pertinent part that:

(b) A person may be a debtor under chapter 7 of this title only if such person is not 
. . . . .
(2) a domestic insurance company ....