**MEDICAL MALPRACTICE JOINT UNDERWRITING ASSOCIATION OF RHODE ISLAND, Plaintiff, Appellant,**

v.

**Mark A. PFEIFFER, etc., Defendant, Appellee.**

**No. 87–1302.**

United States Court of Appeals, First Circuit.

Heard Sept. 16, 1987.

Decided Nov. 2, 1987.

---

David P. Whitman with whom Hanson, Curran & Parks, Providence, R.I., was on brief, for plaintiff, appellant.

Richard B. Woolley, Sp. Asst. Atty. Gen., with whom James E. O'Neil, Atty. Gen., Providence, R.I., was on brief, for defendant, appellee.

Before COFFIN, ALDRICH and TORRUELLA, Circuit Judges.

TORRUELLA, Circuit Judge.

The only issue presented on appeal is whether the district court erred by abstaining from adjudicating a challenge to the constitutionality of a state statute on the basis of principles announced in *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), and by this court in *Allstate Ins. Co. v. Sabbagh*, 603 F.2d 228 (1st Cir.1979) (relying on "*Burford* abstention" principles announced in *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943)). We hold that it did.

Appellant, Medical Malpractice Joint Underwriting Association of Rhode Island (JUA), is an involuntary association, mandated by state regulation,[1] of all insurance companies authorized to write medical malpractice insurance policies in the State of Rhode Island. An insurer must be a member of the JUA to transact this type of

---

**1.** Regulation XXI of the Department of Business Regulation of Rhode Island, pursuant to R.I. Gen.Laws § 42–14.1–1 (1956), *as amended.*

business in the state. Furthermore, the JUA is the exclusive agency through which medical malpractice insurance may be written in the state on a primary basis for physicians. Policies issued by the JUA are on an annual basis.

Appellee Mark Pfeiffer is Director of the Department of Business Regulation and Insurance Commissioner for Rhode Island. As Commissioner, he is required to set premium rates for policies issued by the JUA. Such rates are normally set annually. The Commissioner's orders are subject to review through the state judicial system.

Present rates were set in June of 1985 and normally would have been reviewed in June or July of 1986. Prior to this anticipated review, the JUA applied for a rate increase of 104.6 percent for the 1986–87 policy year. However, on June 26, 1986, R.I.Gen.Laws § 42–14–2.4 (1986 Supp.) became effective, freezing medical malpractice premium rates at the 1985–86 levels.[2] On the following day, the rate hearing was held at which the Commissioner necessarily dismissed the JUA's application because of this statute. The JUA anticipates a $13,-

500,000 increase in its deficit due to the freeze.

In response, the JUA brought this action on June 27, 1986 in United States District Court for the District of Rhode Island, claiming that its property was taken without due process when it was denied a rate hearing for the 1986–87 policy year. It sought various remedies under 42 U.S.C. § 1983, requesting, *inter alia*, a finding that § 42–14–2.4 is unconstitutional.[3] The district court, however, decided to abstain from reaching the merits of JUA's claims and dismissed the complaint.[4]

*Discussion*

Acting under its authority conferred by Article III of the United States Constitution, Congress has mandated, in part, that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331 (1982). In spite of this explicit legislative directive, and due to overriding principles of federalism, comity and judicial economy, the Unit-

2. This statute reads:

**42–14–2.4 Moratorium on premiums for medical malpractice insurance.**—There shall be no increase for the period from July 1, 1986 to June 30, 1987 in any basic rate insurance premium assessed to any physician, of allopathic of osteopathic medicine, clinic, or professional service corporation providing allopathic or osteopathic medical services organized under chapter 5.1 of title 7 or a comparable provision of another state and licensed to do business within this state; provided, however, that this section shall not prohibit the assessment of an increased premium based upon "merit rating" as set forth in § 42–14–2.3. Nothing herein shall be construed to prevent the imposition of any special assessment and/or surcharge as set forth in § 42–14.1–1(D) and/or (E).

3. Specifically, the JUA requested a declaratory judgment that the challenged state statute is unconstitutional, an injunction prohibiting the Commissioner from enforcing the statute, an injunction mandating a new rate hearing, an injunction providing any rate increase will be retroactive to June 1986 or, in the alternative, damages, and attorneys fees. While not an is-

sue on appeal, it should be noted that any retroactive or damages relief against the state is limited by the principles announced in *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974).

4. We note that although the JUA filed its complaint on June 27, 1986—the same day the Commissioner dismissed its rate filing—and the district court held hearings on the merits in September and October of 1986, the court did not announce its decision to abstain until March 23, 1987. We naturally do not criticize the district court for its mistake of law in deciding to abstain, but we are concerned that it should have taken so long for the court simply to determine to decline jurisdiction, leaving the parties where they started nine months previously. *Cf. Harris County Comm'rs Court v. Moore*, 420 U.S. 77, 84, 95 S.Ct. 870, 875, 43 L.Ed.2d 32 (1975) (stating that abstention should not be required where a case has already been long delayed). A district court has many demands on its time, but a case of this importance to the insurance and medical care systems throughout Rhode Island calls for a more expeditious decision.

ed States Supreme Court has carved out several limited exceptions to this mandated original jurisdiction. Appellee argues that abstention principles enunciated in *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) [*Younger* doctrine], *Colorado River Water Conservation District, supra,* and *Allstate Insurance Co., supra,* require abstention in this case.[5]

[1] Appellee correctly notes that the abstention principles underlying *Younger* are applicable to non-criminal proceedings when important state interests are involved. However, he fails to note that this doctrine, grounded on concepts of federalism and comity, counsels abstention under limited circumstances when there are *pending* or *ongoing* state judicial proceedings involving important state interests. *See Middlesex Ethics Comm. v. Garden State Bar Ass'n,* 457 U.S. 423, 431–32, 102 S.Ct. 2515, 2520–21, 73 L.Ed.2d 116 (1982). The *Younger* doctrine does not provide an exception to § 1331 federal court jurisdiction when, as here, state judicial proceedings have not commenced. *Hawaii Housing Authority v. Midkiff,* 467 U.S. 229, 238–39, 104 S.Ct. 2321, 2328, 81 L.Ed.2d 186 (1984).

■ Similarly, reliance in this case by the district court and appellee on the principles underlying *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), is misplaced. First, that decision was not based on abstention. *Id.* at 813–17, 96 S.Ct. at 1244–46. Rather, dismissal of the federal action was approved due to considerations of "[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Id.* at 817, 96 S.Ct. at 1246, *quoting Kerotest Mfg. Co. v. C–O–Two Fire Equipment Co.,* 342 U.S. 180, 183, 72 S.Ct. 219, 221, 96 L.Ed. 200 (1952). In particular, the Court was addressing a situation where concurrent state proceedings regarding the same subject matter had been initiated pursuant to a federal statute that authorized concurrent state court jurisdiction. *Colorado River Water Conservation District,* 424 U.S. at 806, 809, 96 S.Ct. at 1240, 1242. The Court also reached its decision based on clear federal policy to avoid piecemeal litigation regarding the rights in question, participation of one of the parties in other related ongoing state litigation, and the inconvenience of the federal forum. *Id.* at 819–20, 96 S.Ct. at 1247. None of these factors is present in this case. Neither are there other factors present sufficient to satisfy the Court's command that "[o]nly the clearest of justifications will warrant dismissal." *See id.* at 819, 96 S.Ct. at 1247.

■ Our abstention decision in *Allstate Ins. Co., supra,* is not inconsistent with our decision here.[6] *Allstate* held that a district court properly abstained from entertaining a challenge to insurance rates set, after notice and hearing, by a state insurance

---

5. Appellee apparently concedes that *Pullman* abstention is inapplicable here. That doctrine instructs that "federal courts should abstain from decision when difficult and unsettled questions of state law must be resolved before a substantial federal constitutional question can be decided." *Hawaii Housing Authority v. Midkiff,* 467 U.S. 229, 236, 104 S.Ct. 2321, 2327, 81 L.Ed.2d 186 (1984). Since the state law in question here is unambiguous, this type of abstention clearly is inapplicable.

6. Our decision in *Allstate Ins. Co. v. Sabbagh,* 603 F.2d 228 (1979) was based in large part on the holding in *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), requiring a federal district court to exercise its discretion to refuse to hear a challenge to the validity of an order issued by a state commission. The challenged order was part of a complex state regulatory system involving non-legal complexities and subject to state court review in a single state court. *Id.* at 318–26, 63 S.Ct. at 1099–1103. The state court, there, was a "working partner" in the regulatory process with as much power as the state commission to determine particular cases and with authority to formulate new standards for that commission. *Id.* at 326, 63 S.Ct. at 1103. Under these circumstances, the Court found that the public interest, principles of judicial economy, and respect for the state judicial and administrative procedures available to the petitioner required the federal district court to abstain. *Id.* at 327–34, 63 S.Ct. at 1104–07.

commissioner. The commissioner's decision was subject to review by the state's highest court, which had the power not only to affirm or reverse the commissioner's order, but also to modify or amend it. *Id.* at 229. We relied heavily on the fact that the state court's review was not limited to constitutional questions, but included independent determinations of facts regarding the reasonableness of the commissioner's order. *Id.* at 233. We noted that, "[i]n short, the statutory appeal 'is an integral part of the regulatory process,'" and that the state court "has special powers which we do not possess to enable it to correct any problems in orders of the Commissioner without going to the extreme of forcing the whole process to begin anew." *Id.* In *Allstate*, we found that the state court could deal more completely and efficiently with an important local issue governed primarily by local factors and with which it had much greater expertise. Therefore, in the interests not only of federalism, but of comity and judicial efficiency, we allowed abstention under these "exceptional circumstances" as "an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." *Id.* at 230 (quoting *Colorado River Water Conservation District*, 424 U.S. at 813, 96 S.Ct. at 1244).

The case before us does not present these exceptional factors. First, appellant does not complain of rates set after notice and hearing; rather, it complains of the very lack of a meaningful hearing resulting from a statutory mandate. We are not concerned, here, with interrupting a complex state regulatory process; the Rhode Island state legislature has already short-circuited that process by enacting the challenged statute. No factual determination by an agency is being challenged. A state court, reviewing this matter, could do nothing this court cannot do: it would not review the factual basis of an agency's deci-

sion with power to modify or amend it, but would be simply passing on the legality of a state statute. In this situation, the state courts are not a part of a regulatory process and possess no special powers not possessed by the district court to correct any constitutional problems with the Commissioner's order.

Simply, the district court was presented with a direct challenge to the legality of a state statute under the Constitution of the United States. As such, it is a "civil action ... arising under the Constitution" and district court jurisdiction is mandated by 28 U.S.C. § 1331. Jurisdiction cannot be avoided simply because the issue concerns a coherent state policy. *See Zablocki v. Redhail*, 434 U.S. 374, 380 n. 5, 98 S.Ct. 673, 677 n. 5, 54 L.Ed.2d 618 (1978). As we have stated, "The state has no right to an unconstitutional policy, coherent or otherwise." *Allstate Ins. Co.*, 603 F.2d at 232.[7]

We thus hold that a direct challenge to the constitutionality of an unambiguous state statute is not subject to the abstention doctrine, at least when there are no pending or ongoing concurrent state proceedings nor potential for disruption of state appellate procedures intimately related to a complex state regulatory process.

*Reversed and remanded.*

---

7. Appellee also asserts, without argument, that the JUA is an integral component of state government and therefore lacks standing to sue itself. However, a state cannot conscript an entire profession into an involuntary association and thus make it an "integral component of state government" without standing to protect its interests from that government.