George F. GRODE, Insurance Commissioner of the Commonwealth of Pennsylvania

v.

The MUTUAL FIRE, MARINE AND INLAND INSURANCE COMPANY.

Cynthia M. MALESKI, Acting Insurance Commissioner of the Commonwealth of Pennsylvania, as Acting Rehabilitator of the Mutual Fire, Marine & Inland Insurance Co.

v.

BRITTANY INSURANCE COMPANY; Belvedere Underwriting Agents, Ltd.; Belvedere Underwriting Agents, Ltd. for and on behalf of Belvedere Insurance Company,

Brittany Insurance Company, Ltd. Appellant in No. 93–1128,

Belvedere Insurance Company, Ltd. Appellant in No. 93–1129.

Nos. 93–1128, 93–1129.

United States Court of Appeals, Third Circuit.

Argued Aug. 10, 1993.

Decided Oct. 21, 1993.

Rehearing and Rehearing En Banc Denied Nov. 16, 1993.

Eugene Wollan, Ronald J. Theleen (argued), Jeffrey B. Gold, Mound, Cotton & Wollan, New York City, for appellants.

G. Alan Bailey (argued), Mutual Fire Marine & Inland Ins. Co., Philadelphia, PA, for appellees.

Before: SCIRICA, COWEN, and ROSENN, Circuit Judges.

## OPINION OF THE COURT

ROSENN, Circuit Judge.

This case raises a question whether under abstention doctrines a federal court may sur-

render jurisdiction to a state court of an ordinary contract claim initially brought in a state court in behalf of an insolvent insurance company and removed to a federal district court by foreign defendants on grounds of diversity.

The facts and procedural history are not complex and we recite only those necessary to dispose of the narrow issue before us. Cynthia M. Maleski is the Insurance Commissioner of the Commonwealth of Pennsylvania and the State Statutory Rehabilitator[1] of the Mutual Fire, Marine and Inland Insurance Company (Mutual Fire). Mutual Fire is a mutual property, casualty, and special risk insurance company organized under the laws of the Commonwealth of Pennsylvania. It has accrued a deficit exceeding $400,000,000 which has been described as one of the largest insurer insolvencies in the history of the United States.

The Commonwealth Court of Pennsylvania (Commonwealth Court) entered an Order of Rehabilitation, pursuant to which the Rehabilitator has taken control of the assets and affairs of Mutual Fire. The Rehabilitator has proposed a comprehensive plan of rehabilitation to remedy Mutual Fire's financial condition.

Belvedere Insurance Company, Ltd. (Belvedere) and Brittany Insurance Company Ltd. (Brittany) are Bermuda corporations (hereinafter referred to as the Bermuda Corporations), with their principal places of business located in Hamilton, Bermuda. The Insurance Commissioner brought suit in the Commonwealth Court of Pennsylvania against the Bermuda Corporations, alleging that in the aggregate they had failed to pay almost $5,000,000 to Mutual Fire owed under numerous reinsurance contracts (the treaties) between the Bermuda Corporations and Mutual Fire. Thereafter, the Commissioner filed in the Commonwealth Court Petitions to Compel Payment of Current Obligations Past Due [by the Bermuda Corporations] in accordance with the Plan of Rehabilitation. On October 15, 1992, the Bermuda Corporations successfully petitioned for removal of the cases to the United States District Court for the Eastern District of Pennsylvania.

The Bermuda Corporations contended that the treaties under which they allegedly owed monies to Mutual Fire contained broad arbitration clauses. Consequently, on October 27, 1992, they moved that the district court compel arbitration in this matter pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the Convention), 9 U.S.C.A. §§ 201–08 (West 1970 and Supp.1993), and the Federal Arbitration Act (FAA), 9 U.S.C.A. §§ 1 *et seq.* (West 1970 and Supp.1993). The Commissioner and Mutual Fire filed a cross-motion, urging, *inter alia,* that the district court refrain under federal abstention doctrines from exercising jurisdiction over this case.

On January 14, 1993, the district court denied the motion to compel arbitration. Instead, it granted the cross-motion to abstain, and remanded the case to the Commonwealth Court. The Bermuda Corporations timely appealed to this court. We reverse.

## I.

The essence of the issue before this court is not whether the underlying dispute between the Bermuda Corporations and Mutual Fire is subject to mandatory arbitration, an issue which the district court did not decide, but whether the district court properly abstained from exercising jurisdiction. Thus, on appeal we need not determine whether the district court should have compelled arbitration, but simply whether the district court improperly surrendered federal jurisdiction after the Bermuda Corporations removed the litigation to the district court. Consequently, we need not address the numerous arguments raised by the parties pertaining to the applicability of the FAA and the Convention to this case.

■ Because the district court in this case abstained from exercising jurisdiction, believing four types of federal abstention applied, a brief statement of the origin of the abstention doctrine and its development over the

---

1. The Rehabilitator draws her authority from a specialized Pennsylvania statutory scheme for the administration of insolvent insurers, 40 Pa.S. § 221.1–221.63 (the Insurance Act) and is subject to the ultimate supervision of the Commonwealth Court of Pennsylvania.

past half century may be helpful. Although abstention has its roots in the Supreme Court's decision in *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), it was not until 1941 that the doctrine achieved full expression in *Railroad Commissioner v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). Note, *Abstention: An Exercise in Federalism*, 108 U.Pa.L.Rev. 226, 227 (1959). *Pullman* abstention directs that federal courts should abstain from rendering a decision "when difficult and unsettled questions of state law must be resolved before a substantial federal constitutional question can be decided." *United Services Auto. Ass'n. v. Muir*, 792 F.2d 356, 361 (3d Cir. 1986), *cert. denied*, 479 U.S. 1031, 107 S.Ct. 875, 93 L.Ed.2d 830 (1987) (*quoting Hawaii Housing Authority v. Midkiff*, 467 U.S. 229, 236, 104 S.Ct. 2321, 2326, 81 L.Ed.2d 186 (1984)). *Pullman* abstention is not an issue in this case and it was not one of the types of abstention relied on by the district court. We, therefore, will not further discuss it.

The other three types of abstention are the *Burford* abstention, *Colorado River* abstention, and *Younger* abstention. The district court in the instant case relied on all three of these types of abstention, as well as on *Louisiana Power & Light Co. v. Thibodaux*, 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959), which it characterized as a fourth type of abstention.

■ The *Burford* abstention, first enunciated by the Supreme Court in *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), just two years after *Pullman*, held that federal courts should exercise equitable discretion and refrain from exercising authority over questions involving basic problems of state policy pertaining to the regulation of important state natural resources, even if federal court jurisdiction is predicated on diversity of citizenship. The Court subsequently observed in *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1975):

[W]here the State had established its own elaborate review system for dealing with the geological complexities of oil and gas fields, [federal] review would have had an impermissibly disruptive effect on state policy for the management of those fields.

*Id.* at 815, 96 S.Ct. at 1245. *Burford* abstention is usually applied to state regulatory matters such as establishing rates for natural gas or transportation, discontinuing railroad passenger services, *Alabama Public Services Commission v. Southern Railway*, 341 U.S. 341, 71 S.Ct. 762, 95 L.Ed. 1002 (1951), discontinuing intrastate air service, *Allegheny Airlines v. Pennsylvania Pub. Util. Com'n*, 465 F.2d 237 (3d Cir.), *cert. denied* 410 U.S. 943, 93 S.Ct. 1367, 35 L.Ed.2d 609 (1973), or applying state eminent domain procedures, *Ahrensfeld v. Stephens*, 528 F.2d 193 (7th Cir.1975).

■ In *Colorado River*, the Court enunciated a somewhat related doctrine that allowed a federal court to abstain in a case involving complicated Indian tribe water rights where Congress enacted legislation granting state court jurisdiction. The Court concluded that the federal legislation "bespeaks a policy that recognizes the availability of comprehensive state systems for adjudication of water rights as the means for achieving these goals," which, together with other exceptional circumstances, indicated the propriety of federal abstention. *Colorado River*, 424 U.S. at 819, 96 S.Ct. at 1247. Among the exceptional circumstances to be considered by a federal court, in the event of an exercise of concurrent jurisdiction are:

[T]he inconvenience of the federal forum; the desirability of avoiding piecemeal litigation; and the order in which jurisdiction was obtained by the concurrent forums. No one factor is necessarily determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counselling against that exercise is required. *Only the clearest of justifications will warrant dismissal.*

*Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 15–16, 103 S.Ct. 927, 936–37, 74 L.Ed.2d 765 (1982) (*quoting Colorado River*, 424 U.S. at 818–19, 96 S.Ct. at 1246–47) (emphasis in original).

■ The *Younger* abstention, as promulgated in *Younger v. Harris*, 401 U.S. 37, 91

S.Ct. 746, 27 L.Ed.2d 669 (1971), grew out of an effort on the part of a criminal defendant to have the federal district court enjoin a county district attorney from prosecuting him. The defendant contended that the California Criminal Syndicalism Act was unconstitutional on its face and inhibited him from exercising his free speech rights. A three-judge court held the Act void and issued an injunction. In reversing, the Court reiterated longstanding public policy that the basic doctrine of equity jurisprudence counsels courts of equity not to act, particularly to restrain a criminal prosecution, "when the moving party has an adequate remedy at law and will not suffer irreparable injury." *Id.* at 43–44, 91 S.Ct. at 750–51. Interference by a federal court in criminal prosecutions not only obstructs state efforts to operate its judicial system but also offends the principles of comity

> the fundamental premise of judicial federalism which holds that, since both federal and state courts have a duty to enforce the Constitution, there is no constitutional basis, in the absence of some infirmity in the state judicial process itself, for preferring federal courts to state courts as adjudicators of federal constitutional claims.

Laurence H. Tribe, *American Constitutional Law,* § 3–28 at 197 (2d ed. 1988). In *Huffman v. Pursue,* 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975), the Court extended the principles of *Younger* to a state proceeding civil in nature, which in important respects was more akin to a criminal prosecution.

▌The district court in deciding to abstain in this case also cited *Louisiana Power & Light Co. v. City of Thibodaux,* 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959). *Thibodaux* is really a variant of the *Burford* abstention doctrine and has not evolved as a separate doctrine of its own. The case permits a federal court to abstain in a diversity case where state law is unclear and an important state interest is at stake. *Richman Bros. Records Inc. v. U.S. Sprint Communications Co.,* 953 F.2d 1431, 1443 (3d Cir. 1991). In *Thibodaux,* the authority of the city of Thibodaux to expropriate property was challenged in a diversity eminent domain proceeding in the United States district court.

The Supreme Court approved the district court's abstention action, even though the action was one at law rather than an exercise of equitable jurisdiction, on the narrow ground that an eminent domain proceeding had a "special and peculiar nature" involving a sovereign prerogative.... Because the issues turned on legislation with much local variation interpreted in local settings, the court concluded that "[t]he considerations that prevailed in conventional equity suits for avoiding the hazards of serious disruption by federal courts of state government ... are similarly appropriate in a state eminent domain proceeding...." A reading of the opinion makes clear that the court was not extending the narrow doctrine of equitable abstention to actions at law generally. It was merely etching out a very limited exception for abstention in actions at law because of the peculiar nature of eminent domain cases and the unclear applicable state law.

*Baltimore Bank, Etc. v. Farmers Cheese Coop.,* 583 F.2d 104, 111–12 (3d Cir.1978) (citations omitted).

## II.

▌In reviewing the district court's abstention, the underlying legal questions are subject to plenary review, but the decision to abstain is reviewed for an abuse of discretion. As we stated in *United Services Auto. Ass'n. v. Muir,*

> A district court has little or no discretion to abstain in a case that does not meet traditional abstention requirements. Within these constraints, determination whether the exceptional circumstances required for abstention exist is left to the district court, and will be set aside on review only if the district court has abused its discretion.

792 F.2d at 361 (citation omitted). Whether this case falls in the range within which a district court may exercise discretion is a matter of law, reviewable on a plenary basis. "Only if we determine that the case falls within this range will we apply an abuse of discretion standard in reviewing the district

court's decision to abstain." *University of Maryland v. Peat, Marwick, Main & Co.,* 923 F.2d 265, 269 (3d Cir.1991).

■ Acting pursuant to its authority under Article III of the United States Constitution, Congress has mandated that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331 (1982). However, the Supreme Court has carved out several limited exceptions where federal courts should abstain from exercising this grant of jurisdiction due to overriding principles of federalism, comity, and judicial economy. *Medical Malpractice Joint Underwriting Ass'n v. Pfeiffer,* 832 F.2d 240, 242 (1st Cir.1987). Unless one of the established abstention doctrines applies, federal courts have a "virtually unflagging obligation" to exercise their properly invoked jurisdiction. *Colorado River,* 424 U.S. at 817, 96 S.Ct. at 1246.

> We have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given. The one or the other would be treason to the Constitution. [T]he courts of the United States are bound to proceed to judgment and to afford redress to suitors before them in every case to which their jurisdiction extends. They cannot abdicate their authority or duty in any case in favor of another jurisdiction. When a Federal court is properly appealed to in a case over which it has by law jurisdiction, it is its duty to take such jurisdiction.... The right of a party plaintiff to choose a Federal court where there is a choice cannot be properly denied.

*New Orleans Pub. Serv., Inc. v. Council of New Orleans,* 491 U.S. 350, 358–59, 109 S.Ct. 2506, 2512–13, 105 L.Ed.2d 298 (1989) (citations and quotation marks omitted).

Before this court, the Insurance Commissioner argues that we should affirm the district court's abstention on the basis of:

(1) the *Burford* abstention to avoid the danger of interfering in Pennsylvania's administrative and judicial scheme for the regulation of insolvent insurers;

(2) the *Colorado River* abstention because of an important concurrent state court jurisdiction;

(3) the *Younger* abstention because there is an ongoing judicial proceeding in which there is an adequate opportunity to raise constitutional challenges; and

(4) *Thibodaux* because the dispute raises questions of state law bearing on matters of special import.

The Insurance Commissioner's rationale appears to be two-fold: (1) federal adjudication threatens to conflict with important state functions and interests, and (2) the McCarran–Ferguson Act enacted by Congress defines the policy of non interference by the federal government in insurance matters controlled by the state.[2]

In support of her position, the Commissioner cites our decision in *Lac D'Amiante du Quebec, Ltee v. American Home Assurance Co.,* 864 F.2d 1033, 1045 (3d Cir.1988), and *Foster v. The Mutual Fire, Marine and Inland Insurance Co.,* 986 F.2d 48 (3d Cir. 1993). In *American Home,* we held that *Burford* abstention applies to cases involving the state regulation of insolvent insurance companies, such as Mutual Fire in this case. We stated:

> Our analysis must begin with the proposition that the *regulation of insurance companies* unable to meet their obligations entails the type of strong state interest in which application of *Burford* abstention is appropriate. Like the valuable natural resource involved in *Burford,* solvent and healthy insurance coverage is an essential state concern. The McCarran–Ferguson Act specifically provides that it is in the public interest for states to continue serving their traditional role as the *preeminent regulators* of insurance in the federal system and indicates the special status of insurance in the realm of state sovereignty.

---

**2.** The McCarran–Ferguson Act, 15 U.S.C. § 1012(b) (West 1976) provides in pertinent part, "No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purposes of regulating the business of insurance."

*American Home*, 864 F.2d at 1045 (citation omitted) (emphasis added). Thus, the court concluded in *American Home* that "assumption of jurisdiction by the federal court in a suit *against* an insolvent insurer in liquidation proceedings would be highly disruptive of the state's regulatory scheme." *Id.* (emphasis added).

In *Foster*, as in this case, the appellant removed the action filed by Mutual Fire's Commissioner to the United States District Court for the Eastern District of Pennsylvania. Litigation between the appellant and the Insurance Commissioner for *Mutual Fire* arose out of a dispute over money market accounts the appellant, Harris Trust & Savings Bank (the Bank) handled for Mutual Fire. The Bank was the beneficiary of a surety bond issued by Mutual Fire and when Mutual Fire defaulted on payment of the bond, the Bank set off the money market accounts in partial satisfaction of its unpaid claim. The district court abstained under *Colorado River* and *Burford.* On appeal, although we affirmed, we did not analyze or discuss the abstention issues, but addressed the highly controversial dispute as to whether the removal procedures were timely. Our decision in *Foster* is therefore not helpful to our analysis in this case.

■ Although the regulation of insolvent insurance companies is surely an important state interest, this case does not involve the complex and highly regulated issues of insurance regulation; rather, it is a simple contract action involving an allegedly unpaid debt.[3] The complex regulations relating to insolvent insurance companies have to do with plans of rehabilitation and payment to policy holders. Simple contract and tort actions that happen to involve an insolvent insurance company are not matters of important state regulatory concern or complex state interests.

In *New Orleans Pub. Serv.*, 491 U.S. at 350, 109 S.Ct. at 2506, the New Orleans

Public Service, Inc. (NOPSI) petitioned for a rate increase in energy charges to cover the costs of a nuclear plant's construction. Under federal law, such an increase must be approved by the state regulatory commission. The City, however, refused the increase, and NOPSI thus brought suit in federal district court.

Upon review, the Supreme Court held that abstention was not appropriate because, "While *Burford* is concerned with protecting complex state administrative processes from undue federal interferences, it does not require abstention whenever there exists such a process." *Id.* at 362, 109 S.Ct. at 2514. In that case, as in the present one, a complex regulatory scheme was not at issue, as the Court merely had to decide whether federal law preempted state law. "Unlike a claim that a state agency has misapplied its lawful authority or has failed to take into consideration or properly weigh relevant state-law factors, federal adjudication of this sort of pre-emption claim would not disrupt the State's attempt to ensure uniformity" of a local problem, *Id.* (citation omitted), as *"[n]o inquiry beyond the orders themselves and the undisputed facts which underlie them is necessary in order to discover that they are in conflict with the federal act."* *Id.* at 363, 109 S.Ct. at 2515 (citation omitted) (emphasis added).

Thus, like *New Orleans Pub. Serv., Inc.*, the case *sub judice* does not involve complex state administrative processes or matters affecting vital state policy interests. Although the state regulates insolvent insurance companies, simple contract actions that happen to involve such companies are not matters of important regulatory concern or actions interfering with important state policies. The federal court need not decide in this case if the state has misapplied its authority, but rather it must look only to the four corners of the treaties to determine if arbitration is appropriate.

---

**3.** The Insurance Commissioner filed praecipes and caused writs of summons to be served on the Bermuda Corporations in August 1992. On September 14, 1992, the Commissioner filed its petitions in Commonwealth Court to compel payment of current obligations past due to Mutual Fire, alleging that the "court approved Plan re- quires the Rehabilitator to collect the assets underlying the collection of claims against reinsurers," that the Bermuda Corporations refuse to satisfy their obligations despite numerous demands for payment and requesting the court to order them to remit immediately, together with costs and attorney's fees.

In other words, courts abstain in suits against insolvent insurance companies for the same reasons that district courts refer bankruptcy cases to the bankruptcy courts: Insurance companies tend to issue identical policies to a large number of people, rendering a single forum necessary to dispose equitably of the company's limited assets so as to avoid a race to the courthouse. *Id.* at 1045–46. However, such a concern is not present in this case. This is not a suit against the insurance company or the Insurance Commissioner, or a claim on assets of the debtor. The case is an action instituted by the Commissioner against the Bermuda Corporations to recover an alleged debt.

The insolvent insurance company, Mutual Fire, is the plaintiff, not the defendant. As a result, there is not a large number of similarly situated plaintiffs competing for a limited amount of money. The insolvent insurer in liquidation is not called upon "to dissipate its funds *defending* unconnected suits across the country." *American Home,* 864 F.2d at 1045 (emphasis added). Rather, the insurance company is the only plaintiff and the defendants are not insolvent. Thus, this case is distinguishable from those in which the insolvent insurance company is the defendant, and there is no important state interest here involved to warrant abstention.

The McCarran–Ferguson Act, strenuously argued by the Commissioner before this court as justifying abstention, is totally irrelevant. This Act, *inter alia,* provides: "No Act of Congress shall be construed to ... supersede any law enacted by any State for the purpose of regulating insurance...." 15 U.S.C.A. § 1012(b). The action instituted by the Commissioner in this case has nothing to do with Pennsylvania's regulation of insurance.

The Commissioner in this case has submitted as a supplemental citation of authority supportive of its position the recently decided case of *United States Department of the Treasury v. Fabe,* — U.S. ——, 113 S.Ct. 2202, 124 L.Ed.2d 449 (1993), as supportive of its position and the district court's remand order here. That case, however, is inapposite. The issue there was whether the federal statute, 31 U.S.C. § 3713, preempts an Ohio statute with respect to establishing the priority of creditors' claims in a proceeding to liquidate an insolvent insurance company. Under the federal statute, the United States Department of the Treasury would have had first priority upon its claims to a bankrupt debtor's obligations. Under the Ohio statute, it would have had only fifth priority. The Court affirmed the court of appeals' holding that the Ohio statute regulates the business of insurance to the extent that it is designed to further the interests of the insured. In the instant case, however, there is no issue as to priority of any claim in the distribution of Mutual's assets or as to whether Pennsylvania's statute regulates the insurance industry. Any federal intrusion here will be very limited and will have no negative effect on the state's regulatory program. *See Izzo v. Borough of River Edge,* 843 F.2d 765 (3d Cir.1988). The differences between the Commissioner and the Bermuda Corporations are whether the corporations owe the Commissioner any money and whether liability, if any, is to be determined by arbitration under the FAA.

Abstention is also inappropriate in this case because a federal issue is involved which gave the district court independent federal jurisdiction. *Izzo,* 843 F.2d at 768. *American Home* pertained to a declaratory action that did not involve a federal issue. *American Home,* 864 F.2d at 1047 ("Moreover, the instant case exclusively involves issues of state law, which weighs in favor of abstention."). In contrast, the case *sub judice,* raises as a defense a federal treaty (the Convention) and a federal statute (the FAA), giving the district court independent jurisdiction. Thus, the burden on the Commissioner to demonstrate that abstention is appropriate in this case is heightened. *See, e.g., Moses H. Cone Memorial Hosp.,* 460 U.S. at 26, 103 S.Ct. at 941 ("[T]he presence of federal-law issues must always be a major consideration weighing against surrender" of jurisdiction.); *Colorado River,* 424 U.S. at 815 n. 21, 96 S.Ct. at 1245 n. 21 ("Indeed, the presence of a federal basis for jurisdiction may raise the level of justification needed for abstention.").

In sum, *Burford* abstention is inappropriate in this case because no important regula-

tory state interests are involved in an ordinary action for monies allegedly due the plaintiff. Also, this case involves the federal issue of whether to compel arbitration pursuant to a federal treaty and a federal statute. Therefore, the district court erred in deciding to abstain from exercising jurisdiction in the present case pursuant to *Burford.*

Moreover, because there is no vital or important state interest involved in this case, the other types of abstention are similarly inappropriate. *See Colorado River,* 424 U.S. at 800, 96 S.Ct. at 1238 (abstention is necessary where there is an *important* concurrent state court proceeding of a special and peculiar nature involving a state prerogative); *Younger,* 401 U.S. at 37, 91 S.Ct. at 746 (abstention is necessary when there is an ongoing judicial proceeding regarding a *vital* state interest); *Thibodaux,* 360 U.S. at 25, 79 S.Ct. at 1070 (abstention is necessary when a dispute raises questions of state law bearing on matters of *substantial public import*).

### III.

In sum, the dispute underlying this appeal is an ordinary contract action in which the plaintiff happens to be an insolvent insurance company. The state regulatory scheme will not be disrupted by a federal court's disposal of such a claim.

Moreover, the state's interest in regulating insurance companies does not stretch to this situation, because there is not a large number of similarly situated plaintiffs racing to the courthouse. Rather, the Commissioner is merely suing a party for an allegedly unpaid debt. To allow abstention here would be permitting abstention in any tort or contract action involving a regulated industry, no matter how attenuated the connection between the cause of action and the state regulations. Such a result is anomalous, especially in a case, such as the one *sub judice,* that involves a federal issue.

Accordingly, the judgment of the district court will be reversed and the case remanded for further proceedings consistent with this opinion.