Charles N. RILEY, et al., Plaintiff,

v.

Ted D. SIMMONS, et al., Defendants.

Civ. A. No. 91–3626.

United States District Court, D. New Jersey.

Dec. 13, 1993.

& McNew, Haverford, PA, and Daniel W. Krasner, Peter C. Harrar, Michael Jaffe, Wolf, Haldenstein, Adler, Freeman & Herz, New York City, and Dianne Nast, Kohn, Nast & Graf, Philadelphia, PA, for plaintiffs.

Steven S. Radin, Joseph L. Buckley, Sills Cummis Zuckerman Radin Tischman Epstein & Gross, Newark, NJ, for defendants Brown, Bull, Carlotti, Cartledge, Ferland, Hardin, Harris, Huck, Futter, Kraemer, Marano, Simmons, and Weston.

Bruce E. Baldinger, Somerville, NJ, for defendant Kates.

Robert J. Del Tufo, Atty. Gen. of N.J., Trenton, NJ and Robert L. Ritter, Cole, Schotz, Bernstein, Meisel & Forman, Hackensack, NJ, for intervenor/commissioner/rehabilitator.

## OPINION

WOLIN, District Judge.

This matter comes before the Court on the joint motion of defendants Fred Brown, Edward Bull, Stephen Carlotti, Raymond Cartledge, E. James Ferland, Ellen Futter, Paul Hardin, Peter Harris, John Huck, John Kreamer, Rocco Marano, Ted Simmons, Josh Westons, and Henry Kates (collectively "defendants"), former directors of Mutual Benefit Life Insurance Company ("Mutual Benefit" or the "Company"), to dismiss the Consolidated Amended Complaint pursuant to Federal Rules of Civil Procedure 9(b) for failure to state the fraud claim with particularity; Rule 12(b)(1) for lack of subject matter jurisdiction; and Rule 12(b)(6) failure to state a claim. The New Jersey Commissioner of Insurance, Samuel Fortunato, who is also the Rehabilitator of Mutual Benefit, subsequently moved to intervene in this action for the purpose of filing his motion to dismiss the plaintiffs' complaint or in the alternative to stay the action pending the outcome of the Rehabilitator's action in state court. Having considered all of the submissions of counsel and having heard oral arguments, the Court grants the motion to intervene for a limited purpose. The Court also finds that *Burford* abstention is warranted and will dismiss the within action without prejudice.[1]

Kenneth A. Jacobsen, Lisa J. Rodrigues, Ira Neil Richards, Chimicles, Burt, Jacobsen

---

1. Because the Court will abstain, it will not reach

defendants' motion to dismiss the Amended

## BACKGROUND

To understand the complexities and nuances involved in this matter, the Court must examine not only the Life and Health Insurers Rehabilitation and Liquidation Act, N.J.S.A. 17B:32–31 *et seq.*, (the "Act"), which governs the rehabilitation of insolvent New Jersey insurers but also previous orders of the state court and the rehabilitation plan for the Company.

The genesis of this action was the rehabilitation of Mutual Benefit. By order dated July 16, 1991 (the "Rehabilitation Order"), Mutual Benefit, with the consent of its Board of Directors, was placed in rehabilitation. Affidavit of Joseph L. Buckley ("Buckley Aff."), ¶ 2, Ex. A. The New Jersey Commissioner of Insurance (the "Rehabilitator") was appointed as Mutual Benefit's rehabilitator.

The Rehabilitation Order vested the Rehabilitator with all of the powers set forth in the order and all of the "powers and authority expressed or implied under the provisions of *N.J.S.A.* 17B:32–1 *et seq.*," [2] including the power to take immediate and exclusive possession and control of all of Mutual Benefit's causes of action. *Id.* at ¶¶ 2, 3. The Rehabilitation Order also enjoined all policyholders from, among other things, "bringing, maintaining or further prosecuting any action at law, suit in equity, special or other proceeding against Mutual Benefit" and "interfering in any way with the Commissioner, or any successors in office, in his possession of or title to the property and assets of Mutual Benefit, or in the discharge of his duties as Rehabilitator thereof, pursuant to this Order." Buckley Aff., ¶ 4.

The Rehabilitation Order was amended by an order dated August 7, 1991, *Id.* at Ex. B, ¶ 2, which affirmed the previously described provisions of the Rehabilitation Order and also stated that the "Commissioner's authority to act as Rehabilitator with all the powers provided under the July 16 Order and *pursuant to statute* shall continue until further order of this Court." *Id.* at Ex. B, ¶ 1 (emphasis added).

Complaint or the Rehabilitator's Motion to Stay this action.

### The Rehabilitation Plan

On August 3, 1992, over a year after Mutual Benefit was placed in receivership, a proposed Plan of Rehabilitation (the "Plan") was released. Buckley Aff., ¶ 14, Ex. H. The Plan incorporates, *inter alia,* a series of agreements relating to the participation of a proposed insurance industry consortium and the National Organization of Life and Health Insurance Guaranty Associates to provide support for the rehabilitation of Mutual Benefit in the form of guarantees. Buckley Aff., ¶ 14. Under the Plan, *inter alia,* the rehabilitation period would last for seven years, until December 31, 1999. *Id.* at ¶ 15. State guaranty associations would provide a guarantee of death, disability and retirement benefits and full account values at minimum guaranteed interest rates for Mutual Benefit's individual life insurance policyholders and tax deferred annuity holders. *Id.*

The Plan requires approval by the Superior Court of the State of New Jersey. Public hearings on the Plan were commenced on January 28, 1993. *Id.* at ¶ 16. At the time of oral arguments, the Plan had not yet been approved.

## PROCEDURAL HISTORY

### The State Court Actions

On July 17, 1991, one day after the Rehabilitation Order was entered, the first of six class complaints were filed by policyholders and annuitants against the former directors and officers of Mutual Benefit in the Superior Court of New Jersey. Within a week, the other complaints were filed. All of those cases were consolidated. These class actions allege, among other things, mismanagement, misrepresentation and fraud against the defendants and other parties. Buckley Aff., ¶ 8. The plaintiffs in the state court actions purport to represent all 700,000 of Mutual Benefit's policyholders, annuitants and holders of guaranteed investment contracts who either purchased those products or main-

2. The statute, N.J.S.A. 17B:32–1 *et seq.,* was subsequently repealed and replaced by the Life and Health Insurers Rehabilitation and Liquidation Act, N.J.S.A. 17B:32–31 *et seq.* (the "Act").

tained the products during the period November 15, 1989 to July 14, 1991.

On January 5, 1993, the Superior Court, Judge Paul Levy presiding, denied plaintiffs' motion for class certification without prejudice. The court ruled that the "Rehabilitator shall have priority to pursue his claims and the assets of the potentially responsible parties prior to the continued assertion of any claims by plaintiffs" and that the plaintiffs shall not press their claims until a final plan of rehabilitation has been approved and the Rehabilitator's action against potentially responsible parties has been concluded. Buckley Aff., Ex. F. The justification for the order was that the "[p]ublic policy, expressed in the statutes enabling the Commissioner of Insurance to act as rehabilitator, supports" the Rehabilitator's position that his action, which seeks to benefit all policyholders, has preference over plaintiffs' action. *Id.* Judge Levy also barred the plaintiffs in the state court actions from taking discovery against Mutual Benefit which might interfere with or undermine the administration of the rehabilitation. *Id.*

Plaintiffs subsequently moved for an interlocutory appeal. Their motion was denied by the Appellate Division. Certification of Robert L. Ritter, Esq. ("Ritter Certification") Ex. H. Plaintiffs subsequently filed a similar motion for leave to appeal with the New Jersey Supreme Court which was denied. Ritter Certification, Ex: I.

The Rehabilitator filed an action in the Superior Court of New Jersey on July 8, 1993 on behalf of all the policyholders and annuitants. Ritter Certification, Exhibit B. The Rehabilitator's complaint alleges that the former directors and officers of Mutual Benefit mismanaged Mutual Benefit, and made material misrepresentations to Mutual Benefit's policyholders and annuitants. Specifically, the Rehabilitator's complaint alleges that the former directors and officers of Mutual Benefit mismanaged Mutual Benefit by investing too much of the company's assets in real estate and by investing in high risk real estate projects and leveraged buy-outs. The complaint also alleges that the directors and officers made material misrepresentations to Mutual Benefit's policyholders and annui-

tants concerning the financial condition of the company. This complaint seeks recovery on theories of negligence, breach of fiduciary duty, fraud and waste.

**This Action**

The Complaint in the within action was filed with this Court on August 14, 1991. Plaintiffs—representing all the annuitants, some 200,000 in number—seek recovery from the defendants, as controlling persons of Mutual Benefit. Plaintiffs allege that defendants (1) failed to register its annuity products, which were in fact securities, with the Securities and Exchange Commission in violation of sections 5 and 12(1) of the Securities Act of 1933 (the "1933 Act"), 15 U.S.C. §§ 77e, 77*l* (1); (2) made materially false or misleading statements in the prospectuses issued in connection with the annuities in violation of section 12(2) of the 1933 Act, 15 U.S.C. § 77*l* (2); (3) made materially false and misleading statements about is financial strength which induced plaintiffs to purchase the annuities in violation of section 10(b) of the Securities Exchange Act of 1934 (the "1934 Act"), 15 U.S.C. § 78j(b); and (4) violated New Jersey statutory and common law. Complaint, ¶¶ 107–112. The plaintiffs also allege that Mutual Benefit compiled a real estate portfolio that lacked adequate diversification, ¶ 42, that Mutual Benefit's overall portfolio had substantial concentration in real estate, ¶ 45, and that Mutual Benefit made improper investments. ¶¶ 47–65.

**DISCUSSION**

**1. Commissioner's Motion to Intervene**

The Commissioner of Insurance, as the Rehabilitator of Mutual Benefit, has moved to intervene in this action "for the purpose of filing his motion to dismiss the plaintiffs' complaint or in the alternative to stay the action pending the outcome of the Rehabilitator's action" in state court. Memorandum of Law of Intervenor Samuel F. Fortunato ("Rehabilitator's Brief"), p. 13. The Commissioner argues that pursuant to Federal Rule of Civil Procedure 24(a) he has the right to intervene as he has a vested interest in the property of Mutual Benefit, *id.* at p. 9, or in the alternative, permissive intervention pur-

suant to Federal Rule of Civil Procedure 24(b).

### A. Intervention of Right

■ Federal Rule of Civil Procedure 24(a) provides in pertinent part,

**Intervention of Right.** Upon timely application anyone shall be permitted to intervene in an action:

. . . . . .

(2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

To satisfy Rule 24(a)(2) the Rehabilitator must show: (i) his application is timely; (ii) he has a direct interest in the subject matter of the litigation; (iii) it's interest would be impaired by disposition of the action without it's involvement; and (iv) it's interest is not adequately represented by any existing party. *Harris v. Reeves*, 946 F.2d 214, 219 (3d Cir.1991), cert denied sub nom, *Abraham v. Harris*, — U.S. —, 112 S.Ct. 1516, 117 L.Ed.2d 652 (1992). Each of these requirements must be met. *Id.* The Court finds that the Rehabilitator has met all four requirements.

First, there is no dispute that the motion is timely. The Rehabilitator's motion was filed on August 20, 1993, approximately two weeks after defendants' motion was filed, but well in advance of the September 13, 1993 return date.

■ Second, the Rehabilitator has a direct interest in the subject matter of the litigation.[3] Courts have found that a public official has a sufficient interest to intervene in which the subject of the suit comes within the scope of his official duties. *Harris v. Pernsley*, 820 F.2d 592, 602 (3d Cir.1987), cert. denied, *Castille v. Harris*, 484 U.S. 947, 108 S.Ct. 336, 98 L.Ed.2d 363 (1987). To intervene pursuant to Rule 24(a)(2), the Rehabilitator must do more than show that his duties may be affected in some incidental manner. Rather, the Rehabilitator must demonstrate that there is a tangible threat to a legally cognizable duty to have the right to intervene. *See e.g.*, *United States v. Perry County Board of Education*, 567 F.2d 277, 279 (5th Cir.1978).

■ N.J.S.A. 17B:32–32 et seq. expressly provides the Rehabilitator with a cognizable duty which would be compromised if the Rehabilitator were not allowed to intervene. N.J.S.A. 17B:32–50(a)(15) grants the Rehabilitator the power to "prosecute any action which may exist on behalf of creditors, members, policyholders or shareholders of the insurer against any director or officer of the insurer, or any other person."[4] N.J.S.A. 17B:32–50(a)(21) provides that the Rehabilitator with the additional power "to exercise and enforce all the rights, remedies and powers of any creditor, shareholder, policyholder or member."

These directives to the Rehabilitator reflect the overarching goal of N.J.S.A. 17B:32–32 et seq. The statute provides for a comprehensive scheme for the rehabilitation and liquidation of life and health insurers with a view to protecting the assets of the insurer as well as the interests of creditors, members, policyholders or shareholders of the insurer. *See* N.J.S.A. 17B:32–35(a)(11). The Act authorizes the Rehabilitator to make an application to enjoin any party from (i) interfering with the rehabilitation, or (ii) lessening the value of the insurer's assets, or (iii) prejudicing the rights of policyholders, creditors or shareholders. *See id.* The Act provides that the "rehabilitator may take such action as he deems necessary or appropriate to reform and revitalize the insurer." N.J.S.A.

---

**3.** "Plaintiffs recognize that, under the circumstances of this litigation, it is appropriate for the Court to address the Rehabilitator's concerns." Plaintiffs' Opposition Brief, p. 1, n. 1.

**4.** N.J.S.A. 17B:32–50 speaks in terms of the liquidator. While this term is not defined in the statute, section 17B:32–33 defines "receiver" as "receiver, liquidator, rehabilitator or conservator." Hence, the Court concludes that in this context, the term "liquidator" can be used interchangeably with rehabilitator.

17B:32–43(c). The Rehabilitator may also "continue to prosecute and to institute in the name of the insurer or in his own name any and all suits and other legal proceedings, in this State or elsewhere, and to abandon the prosecution of claims he deems unprofitable to pursue further." N.J.S.A. 17B:32–50(a)(14).

In opposing the motion to intervene, plaintiffs argue that because the Rehabilitator will remain free to protect and maximize Mutual Benefit's assets by pursuing his own litigation against Mutual Benefit's former officers and directors, irrespective of whether Plaintiffs are permitted to proceed in this litigation, the Rehabilitator is free to carry out his statutory duties. Plaintiff's Memorandum of Law in Opposition to the Rehabilitator of Mutual Benefit Life Insurance Co.'s Motion to Intervene ("Plaintiff's Opposition Brief"), p. 6. To support this contention plaintiffs submit that *Hayes v. Gross,* 982 F.2d 104 (3d Cir.1992), is dispositive of the Rehabilitator's claim.

In *Hayes,* a purchaser of stock in an insolvent savings bank sought to recover against the former officers and directors of the bank on direct fraud claims under the Securities Exchange Act, even though the bank was in receivership of the Resolution Trust Corporation ("RTC"). RTC claimed that the plaintiffs' suit "threaten[s] to impair RTC's statutory mandate [under the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA")] to protect and maximize the assets of the failed" bank. *Id.* at 109. Plaintiffs' direct the Court's attention to the following passage wherein the Third Circuit, in rejecting the RTC's arguments, stated:

> We can perceive no merit to this argument. The RTC does not identify any section of FIRREA that would be violated by permitting a bank stockholder to recover on a direct fraud claim given him by the Exchange Act. It merely asserts and reasserts that those whose interest the RTC represents will be better off if this

case is dismiss. This proposition is self serving.

*Id.*

Plaintiffs submit that this case is synonymous with *Hayes.* Hence, as in *Hayes,* the Act would not be violated by permitting investors in Mutual Benefit products to recover on direct fraud claims under federal law. The Court does not believe that *Hayes* extends to this case. *Hayes* dealt with interpreting FIRREA. The *Hayes* court rejected the RTC's argument because, *inter alia,* "the RTC does not identify any section of FIRREA that would be violated by permitting a bank stockholder to recover on direct fraud claim." *Id.*

As the Rehabilitator correctly notes, this case is completely different. The Act, unlike FIRREA, specifically vests the Commissioner of Insurance with the right and obligation to prosecute such claims. Moreover, the Rehabilitation Order imposed duties on the Rehabilitator. It granted the Rehabilitator with the power to take immediate and exclusive possession and control of all of Mutual Benefit's causes of action. Buckley Aff. at ¶¶ 2, 3. The Order also specifically enjoins policyholders from interfering in any way with the Rehabilitator in his possession or title to the property and assets of Mutual Benefit. Ritter Certification, Exh. A, ¶ 4. This includes interfering with the Rehabilitator's proceeding, interfering with the rehabilitation process, wasting assets, lessening the value of Mutual Benefit's assets, or attempting to make a claim on Mutual Benefit's assets. Ritter Certification, Exh. A.

Continuation of plaintiffs' action will disrupt the Rehabilitator's pursuit of both his statutorily mandated goals and duties, as well as his duties under the Rehabilitation Order. First, this action may impair and impede the Rehabilitator's ability to protect the estate. The property sought after by plaintiffs is identical to the property sought after by the Rehabilitator in his complaint, namely the available directors' and officers' insurance coverage (the "D & O Policy").[5] A judgment awarded to plaintiffs could wipe

---

5. The D & O policy refers to a $20 million policy to provide for coverage for executive liability. On March 20, 1992, the state court granted the motion of the Rehabilitator to pay the $1 million premium for the extension of the policy and new endorsements.

out the coverage limits of the policy, thereby redirecting money away from the estate and directly to plaintiffs. If the Rehabilitator does not intervene, his only source of recovery could be adversely affected.

The Rehabilitator's state action against Mutual Benefit's directors and officers will presumably continue irrespective of whether this litigation continues or is stayed or dismissed. Allowing this action to proceed parallel to the Rehabilitator's state action will require defendants to defend themselves in two fora. That is, it will produce double litigation of similar claims. Double litigation necessarily entails double costs and expenses. Such costs and expenses would, in turn, diminish the D & O Policy as defense fees are included in its coverage limits. Rehabilitator's Brief at p. 10.

In addition to the economic consequences, the simultaneous prosecution of the federal and state actions will result in an administrative and legal burden to the Rehabilitator which may impair his ability to effectively administer the rehabilitation. On August 4, 1983, plaintiffs issued an initial subpoena to the Rehabilitator requesting massive discovery directed in large part toward Mutual Benefit documents now under the control of the Rehabilitator. Ritter Certification, Exh. J. The resources of Mutual Benefit and the Rehabilitator are already strained. Mutual Benefit's staff, particularly its legal staff, has been dramatically reduced because of its financial problems. Certification of Frank Casciano, Esq. ("Casciano Certification"). The remaining legal staff is intensively involved in implementation of the Rehabilitation plan. The Rehabilitator has determined that "[i]t would take the efforts of dozens of person over a period of months to comply with this *first* discovery demand of the plaintiffs." Rehabilitator's Brief p. 8 (emphasis in original). It is clear that Mutual Benefit has neither the time or resources to deal with this burden.

That such requests would unduly burden the Rehabilitator finds support in the state court's Rehabilitation Order. This type of interference was anticipated and specifically enjoined. The state court held that "the plaintiffs may proceed with discovery as long as their efforts do not require *any input from the rehabilitation estate* and do not interfere with the prior orders of this Court in the rehabilitation action." Buckley Aff., Exh. F, ¶ 4 (emphasis added).

■ The third element for a Rule 24(a) intervention—a showing that the Rehabilitator's interest would be impaired by disposition of the action without it's involvement—is also met. While the immediate object of this motion could be determined without the intervention of the Rehabilitator, the interest of the Rehabilitator will be implicated and impaired because denial of the motion will require the Rehabilitator to be involved in the litigation. As has been discussed *supra*, plaintiffs have already requested massive document production and discovery. If this motion were to be denied, then the Rehabilitator and Mutual Benefit would be forced into double litigation.

■ Finally, the Rehabilitator's interest will not be adequately represented by the present parties to this lawsuit. Defendants in this action are adverse to the Rehabilitator in state court. Plaintiffs in the within action, however, are actually a subset of the group the Rehabilitator represents in state court. Plaintiffs here seek to represent all the annuitants, some 200,000 in number, Rehabilitator's Brief, p. 4, while the Rehabilitator in his action represents all of the policyholders and annuitants of Mutual Benefit. *Id.* Despite this overlap, the Court finds it appropriate to allow the Rehabilitator to intervene when he can contribute to the Court's understanding of the Rehabilitation Plan, Rehabilitation Order, and the current administration of Mutual Benefit. *See Harris,* 820 F.2d at 603. No party present to this lawsuit can adequately represent these interests.

Because the Rehabilitator has an obligation to protect this property based upon statute and court order, his interest would be impaired by this action, and no party adequately represents the Rehabilitator's interest, the Rehabilitator's motion to intervene for the purpose of filing his motion to dismiss the plaintiffs' complaint or in the alternative to stay the action pending the outcome of the Rehabilitator's action is granted.

## B. Permissive Intervention

In the alternative, it is clear that the Rehabilitator has also satisfied the elements of permissive intervention pursuant to Federal Rule of Civil Procedure 24(b). Rule 24(b) states in pertinent part:

Upon timely application anyone may be permitted to intervene in an action ... (2) when an applicant's claim or defense and the main action have a question of law or fact in common.... In exercising its discretion the court shall consider whether intervention will unduly delay or prejudice the adjudication of the rights of the individual parties.

■ Intervention is proper where there is a showing that the applicant's claim has a question of law or fact in common with the main claim. *Deutschman v. Beneficial Corp.*, 132 F.R.D. 359 (D.Del.1990). The factual and legal claims of the plaintiffs are common, if not identical to those of the Rehabilitator.

■ The Rehabilitator's complaint alleges that the former directors and officers of Mutual Benefit mismanaged the company by investing too much of the company's assets in real estate, Reply Affidavit of Joseph L. Buckley, Exh. 2, Complaint of the Commissioner of Insurance, No. C–91–00109 ("Rehabilitator's Complaint"), ¶¶ 44–46, and by investing in high-risk real estate projects, and leveraged buy-outs, *id.*, ¶¶ 47–51; particularly the Fisher and Williams Island development projects, *id.*, ¶¶ 58–66; ¶¶ 52–57 and the leveraged buy-outs of Ernst Home Centers, *id.*, ¶¶ 67–73, and the William Carter Company. *Id.*, ¶¶ 82–85. The Rehabilitator's Complaint also alleges that the directors and officers made material misrepresentations to Mutual Benefit's policyholders and annuitants regarding the financial condition of the Company. *Id.*, ¶¶ 140–144. The Rehabilitator's complaint seeks recovery on theories of negligence, breach of fiduciary duty, fraud and waste.

Similarly, plaintiffs allege that Mutual Benefit compiled a real estate portfolio that lacked adequate diversification, Complaint ¶ 42, that Mutual Benefit had a substantially greater concentration in real estate (over 50%) than the industry average, *id.*, ¶ 44, and that over the years, Mutual Benefit dramatically increased its concentration in real estate. *Id.*, ¶ 45. The complaint further alleges that Mutual Benefit made improper investments in Fisher Island, Williams Island, William Carter Company and Ernst Home Centers. *Id.*, ¶¶ 47–65. Finally, the within Complaint alleges that the defendants made material misrepresentations with respect to Mutual Benefit's investments. *Id.*, ¶¶ 71–75.

The plaintiffs' complaint is factually distinct from the Rehabilitator's Complaint in that it makes certain allegations concerning Mutual Benefit's sale of annuities, which plaintiffs claim should have been registered under sections 5 and 11 of the Securities Act of 1933. Plaintiffs, relying on *Hayes v. Gross*, attempt to draw a distinction between policyholders and annuitants. Plaintiffs argue that because they purchased their Mutual Benefit products as investments, and not for insurance purposes, they are distinguished from other Mutual Benefit policyholders and hence the Rehabilitator's action. Plaintiffs' Brief, p. 4, n. 5. As they were investors, plaintiffs suffered injuries irrespective of any diminution in the value of Mutual Benefit's assets that occurred after Mutual Benefit was placed in rehabilitation. Their injuries were separate and distinct from those the Rehabilitator seeks to redress, as they are seeking recovery for an injury that arose before Mutual Benefit was placed in rehabilitation, whereas the Rehabilitator's action is limited to injuries that arose after. "Plaintiffs and members of the Class that they seek to represent were injured at the point of investment when they purchased Mutual Benefit products, the value and investment potential of which were overstated." Plaintiffs's Brief, p. 4.

The Court is not persuaded by plaintiffs' argument. To the extent that annuities are investments, they always have as much value as plaintiffs bargained for on the date of purchase. Until Mutual Benefit was placed in rehabilitation, plaintiffs could have withdrawn the principal; with the Rehabilitation Order, restraints on withdrawals, including annuity withdrawals, were imposed. Hence, plaintiffs were not injured as of the date of

purchase but rather as of the date of the Rehabilitation Order.

Moreover, the Complaint does not support plaintiffs' argument. Nowhere in the Complaint do plaintiffs contend that they were injured as of the date of purchase. In fact, in paragraph 18 plaintiffs allege that they "risked possible loss of both principal and interest, for example, in the event that Mutual Benefit became insolvent." Accordingly, these plaintiffs have suffered the same loss as Mutual Benefit and all of the other policy-holders and annuitants of the company.

■ "Plaintiffs also argue that the Rehabilitator lacks standing to assert their claims under section 10(b) of the Securities Exchange Act. Since only persons who purchase or sell securities have standing to bring such claims, *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 731, 95 S.Ct. 1917, 1923, 44 L.Ed.2d 539 (1975), and the Rehabilitator did not purchase or sell Mutual Benefit securities, only the plaintiffs can assert the section 10(b) claims.

This argument is based on nomenclature. Even though section 10(b) involves securities, it is still a fraud action. The Rehabilitator has already raised the issue of fraud in his complaint, albeit in regards to common law fraud. Nevertheless, the Rehabilitator's action is still a fraud action regardless of whether it is based on a security or not. Given the similarity of the essential elements in the fraud actions, the Court concludes that the Rehabilitator has made a sufficient showing that there is sufficient similarity between the fraud actions to justify intervention for the limited purpose of filing his motion to dismiss the plaintiffs' complaint or in the alternative to stay the action pending the outcome of the Rehabilitator's action.

■ Moreover, intervention will not unduly delay or prejudice the rights of the original parties. *See State of Arizona v. Motorola, Inc.*, 139 F.R.D. 141 (D.Ariz.1991) (intervention is proper where such will not unduly delay or prejudice the rights of the original parties). The request to intervene is only for a limited purpose—to dismiss or stay plaintiffs' action. As the Rehabilitator's motion can be determined simultaneously with the defendant' motion, there will be no delay. Further, the original parties will not be prejudiced by virtue of the intervention. The Rehabilitator is seeking the same relief as the plaintiffs: to recover damages from Mutual Benefit's former directors and officers.

For all the reasons given above, the Court will permit the Rehabilitator to intervene in this action for the limited purpose of filing his motion to dismiss the plaintiffs' complaint or in the alternative to stay the action pending implementation of the Rehabilitation Plan and completion of the Commissioner's action now pending in the state court.

## 2. Burford Abstention

Now, the Court turns its attention to whether abstention is appropriate. The mandate of the federal judiciary compels courts to resolve all disputes within their jurisdiction. *See New Orleans Pub. Serv. Inc. v. Council of New Orleans* ("NOPSI"), 491 U.S. 350, 357–59, 109 S.Ct. 2506, 2512–13, 105 L.Ed.2d 298 (1989).

[Courts] have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given. The one or the other would be treason to the Constitution. [T]he courts of the United States are bound to proceed to judgment and to afford redress to suitors before them in every case to which their jurisdiction extends. [Courts] cannot abdicate their authority or duty in any case in favor of another jurisdiction.

*NOPSI*, 491 U.S. at 358–59, 109 S.Ct. at 2512–13 (citations omitted) (quotation marks omitted).

However, federal courts may refuse to decide certain matters before them even though all jurisdiction and justiciability requirements are met. *Railroad Commission v. Pullman*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). Under certain circumstances, federal courts may abstain from exercising their "grant of jurisdiction due to overriding principles of federalism, comity and judicial economy." *Grode v. Mutual Fire, Marine & Inland Insurance Co.*, 8 F.3d 953, 958 (3d Cir.1993), *citing Medical Malpractice Joint Underwriting Ass'n v. Pfeiffer*, 832 F.2d 240, 242 (1st Cir.1987).

Because this Court has an "unflagging obligation" to exercise its properly invoked jurisdiction, *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976); *Gwynedd Properties, Inc. v. Lower Gwynedd Township,* 970 F.2d 1195, 1199 (3d Cir.1992), abstention is appropriate in rare situations. *Hawaii Housing Authority v. Midkiff,* 467 U.S. 229, 236, 104 S.Ct. 2321, 2327, 81 L.Ed.2d 186 (1984) (abstention is "the exception, not the rule").

The Supreme Court has carefully defined the areas in which abstention is permissible. *See United Services Auto Ass'n v. Muir,* 792 F.2d 356, 361 (3d Cir.1986) ("[a] district court has little or no discretion to abstain in a case that does not meet traditional abstention requirements."); *Gwynedd,* 970 F.2d at 1199. The *Burford* abstention, first enunciated in *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), permits a federal court presented with basic problems of state policy pertaining to the regulation of important state matters to abstain from exercising its jurisdiction when it would disrupt an important and complex state regulatory system.

In *Burford,* plaintiff challenged the grant of an oil permit to drill to a competitor by questioning whether the Texas Railroad Commission had properly applied the complex state regulations. The Supreme Court reinstated the district court's refusal to review the grant of the permit and dismissal of the case. The Court held that because the state of Texas (i) had created an elaborate regulation system to deal with the geological complexities of oil and gas fields, and (ii) had centralized judicial review in a single state district court which had developed the "specialized knowledge which is useful in shaping the policy of regulation of the ever-changing demands in this field", *id.* at 327, 63 S.Ct. at 1104, the action could not be resolved without impermissibly disrupting and unduly intruding into the state's management process. *Id.* at 334, 63 S.Ct. at 1107. Under these circumstances the Court concluded "a sound respect for the independence of state action requires the federal equity court to stay its hand." *Id.* at 334, 63 S.Ct. at 1107.

*Burford,* as read in subsequent cases, limits "interference by the federal courts in determinations of inherently local matters made by state courts pursuant to a complex state regulatory scheme." *University of Maryland v. Peat Marwick Main & Co.,* 923 F.2d 265, 270 (3d Cir.1991). Where a complex regulatory scheme is established and is central to state interests, abstention is appropriate if "the district court's exercise of jurisdiction would interfere with ongoing proceedings pursuant" to that regulatory mechanism, *General Glass Industries Corp. v. Monsour Medical Foundation,* 973 F.2d 197, 201 (3d Cir.1992), or if the federal court had to deal primarily with state law issues where exercise of such jurisdiction will disrupt the state's efforts to "establish a coherent policy with respect to a matter of substantial public concern." *Lac D'Amiante du Quebec v. American Home Assur.* ("LAQ"), 864 F.2d 1033, 1043 (3d Cir.1988), *quoting Colorado River,* 424 U.S. at 814, 96 S.Ct. at 1245. Thus, "a federal court sitting in equity must decline to interfere with proceedings or orders of state administrative agencies"

> [w]here timely and adequate state court review is available ... [and] (1) when there are 'difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case at bar;' or (2) where the 'exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.'

*NOPSI,* 491 U.S. 350, 361, 109 S.Ct. 2506, 2514 (citation omitted). Since New Jersey's regulatory processes are at issue here, and this Court normally would have jurisdiction of this action pursuant to section 22 of the Securities Act, section 27 of the Exchange Act and under the principles of supplemental jurisdiction, a *Burford* abstention may be appropriate.

The Rehabilitator argues that a *Burford* abstention is appropriate because: (i) adjudication by this Court would conflict with important state functions and interests, (ii) the present action is entirely duplicative of the Rehabilitator's efforts and if permitted to

continue, would seriously disrupt the Rehabilitator from achieving a fair result for all 700,000 policyholders and annuitants; and (iii) permitting this case to go forward will drain the assets in the D & O policy and therefore one of the purposes of New Jersey's regulatory scheme would be lost as defendants would have to dissipate this fund defending themselves in unconnected suits.

Likewise, the defendants assert that abstention is proper. Defendants contend that exercise of jurisdiction over plaintiffs' action would seriously disrupt New Jersey's efforts to achieve equity among all of Mutual Benefit's policyholders and creditors. Defendants further argue that, because plaintiffs have the same remedies in state court that they seek in this forum, it would be inequitable to permit a different tribunal from the one which determines the damages to similarly situated policyholders and creditors to determine the amount of plaintiffs' damages as a result of the alleged fraud.

In opposing both the Rehabilitator's and defendants' arguments, plaintiffs submit that *Burford* is inappropriate here because (i) defendants are not the class that the Act seeks to protect; and (ii) timely and adequate state court review is unavailable. In addition, plaintiffs suggest that continued prosecution of this action will not disrupt the Rehabilitator's effort to implement a rehabilitation plan, no less hinder the Rehabilitator from pursuing the claims he has asserted. As plaintiffs' arguments concern the elements for a *Burford* abstention, the Court considers each argument in turn.

### A. The Defendants' Connection With the Regulatory Scheme

██ It is now well settled that abstention from the exercise of federal jurisdiction over claims arising out of state regulation of insolvent insurance companies is particularly appropriate. *LAQ*, 864 F.2d 1033; *Grode*, 8 F.3d 953. The Court of Appeals stated:

Our analysis must begin with the proposition that the *regulation of insurance companies* unable to meet their obligations entails the type of strong state interest in which application of *Burford* abstention is appropriate. Like the valuable natural resource involved in *Burford*, solvent and health insurance coverage is an essential state concern. The McCarran–Ferguson Act specifically provides that it is in the public interest for states to continue serving their traditional role as the *preeminent regulators* of insurance in the federal system and indicates the special status of insurance in the realm of state sovereignty.

*Grode*, 8 F.3d at 958 (emphasis in original), *citing LAQ*, 864 F.2d at 1045 (citation omitted). Consequently, the *LAQ* court concluded that "assumption of jurisdiction by the federal court in a suit *against* an insolvent insurer in liquidation proceedings would be highly disruptive of the state's regulatory scheme." *LAQ*, 864 F.2d at 1045 (emphasis added). In this Circuit, abstention is appropriate not only when the action is against the insolvent insurance company, but also when it involves the insurer's officers, directors, receiver, or trustee. *See University of Maryland*, 923 F.2d at 271. Accordingly, courts should not abstain when the action does not involve the insurer, its officers, directors, receiver or trustee. For example, in *University of Maryland*, the court did not abstain because the defendant in that case was the insurance company's accounting firm, not the insurer itself or its receiver, trustee or the like. The Third Circuit in *University of Maryland* wrote:

In our view, *Burford* abstention may be ordered in insurance insolvency cases only when one of the parties to the action in which the federal court abstains is the insolvent insurer or its receiver, trustee, officers, and the like.... [The auditor's] connection to the state regulatory mechanism (governing insolvency proceedings) that *Burford* is designed to protect is simply too attenuated to justify renunciation of a federal court's obligation to exercise the jurisdiction granted to it by Congress.

923 F.2d at 271.

Even though plaintiffs reproduced this exact passage in their brief, they argue that this matter is not "really against Mutual Benefit. It is only an action against the company's officers and directors, at least two of whom (Defendants Kates and Simmons)

are no longer employed by the Company," *see* Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss the Consolidated Amended Complaint ("Plaintiff's July Brief"), p. 35.[6]

While *University of Maryland* obviously supports abstention here (the defendants are the directors and officers of Mutual Benefit), plaintiffs suggest that the Court's analysis should change because at least some of the defendants are former officers and directors of Mutual Benefit. The connection between these defendants and the insurer are too attenuated to justify abstention. *See* Plaintiff's July Brief, p. 36. Plaintiffs ask the Court to apply the *University of Maryland* rationale—namely, that New Jersey's regulatory scheme governing insurance company's insolvencies is not concerned with protecting former officers and directors and thus the officers and directors' connection to the state regulatory mechanism (governing insolvency proceedings) that *Burford* was designed to protect is simply too attenuated. *See University of Maryland*, 923 F.2d at 271; *General Glass*, 973 F.2d at 202.

In New Jersey, the guiding rationale (governing insolvency proceedings) is that the rehabilitator should protect the insurer from any unnecessary interference which would hamper or hinder the rehabilitation effort to the detriment of insureds, claimants, creditors and the public generally. The regulatory scheme contained in the Act is specifically concerned with protecting and preserving the interest of insureds, claimants, creditors and the public generally. N.J.S.A. 17B:32–31(b). To carry out this mandate, the Rehabilitator is authorized to "take such action as he deems necessary or appropriate to reform and revitalize the insurer." *Id.* at 17B:32–43(c). Specifically, the rehabilitator is charged to *inter alia* prevent waste of the insurer's assets, *id.* at 17B:32–35(a)(4); *id.* at 17B:32–50(a)(8), lessening of the value of the insurer's assets, *id.*, and interference with the rehabilitation process. *Id.* at 17B:32–35(a)(3). The Rehabilitator is, in fact, vested with the power not only to "prosecute any action which may exist on behalf of the ... members, policyholders or shareholders of the insurer against any director or officer of the insurer," *id.* at 17B:32–50(a)(15), but also to "exercise and enforce all the rights, remedies and powers of any ... shareholder, policyholder or member," *id.* at 17B:32–50(a)(21), which would benefit the insurer, and in turn its insureds, claimants, creditors and the public generally.

■ That a direct connection exists in this case between the Rehabilitator and the former officers and directors is demonstrated by the document demands made by plaintiffs. While plaintiffs' action involves the activities of these individuals, plaintiffs' discovery demands are on the insolvent insurer. Plaintiffs seek to inquire about the decisions these officers and directors made while they were operating Mutual Benefit. The documents requested are not in the hands of these former executives, but are now under the control of the Rehabilitator.

For this very reason, this matter is distinguishable from *University of Maryland*. In that case, discovery would have focused on the accountants, not the insolvent insurer. The accountant/defendants in *University of Maryland* could have complied with such a document request without affecting the insurer or implicating the receiver. Here, no such clear delineation nor separation is possible.

Plaintiffs attempt to further bolster their argument by asserting that the state court "had no qualms about permitting claims against the directors and officers to proceed." *See* Plaintiffs' July Brief, p. 37. The Court finds that this statement mischaracterizes the state court's position. The state court recognized that in the action before it there were other defendants beyond the directors and officers: Ernst & Young and three insurance agencies. The court stayed all claims but allowed discovery to proceed. Discovery was not allowed to proceed unfet-

---

**6.** In their Opposition Brief plaintiffs direct the Court's attention to their Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Consolidated Amended Complaint, which defendants' filed on July 1, 1993. *See* Opposition Brief, p. 1, n. 2. As plaintiffs direct that the July Memorandum be referenced, this Court will look to that Memorandum as if the arguments contained therein were set out fully in the current opposition papers.

tered, however. The court unequivocally limited discovery to matters and issues that would not require input from or involvement of the Rehabilitator.

If this Court allowed plaintiffs to proceed, it would render the state court's order a nullity. This Court will not allow plaintiffs to subvert the prohibition placed on them in state court by changing the forum and instituting a suit on a different theory. For all the above reasons, the Court concludes that abstention is appropriate because this action's central focus is on the officers and directors of Mutual Benefit and implicates the insolvent insurer.

### B. Securities Fraud Claims Versus Fraud Claims

 The Supreme Court has suggested that *Burford* may apply "when timely and adequate state court review is available." *NOPSI,* 491 U.S. at 361, 109 S.Ct. at 2514. Plaintiffs assert that their claims concern securities fraud while the Rehabilitator's claims concern common law fraud. Hence, they argue, their claims are neither derivative nor duplicative of the claims the Rehabilitator has pending in state court. In fact, plaintiffs contend that they have raised claims that the Rehabilitator cannot raise in the state court as federal courts have exclusive jurisdiction over their section 10(b) claim and therefore there can be no state court review available to them. If this is so, then it would clearly be inappropriate to abstain as plaintiffs would be deprived not only of a forum but also of all recourse on the merits of their claim.

The teachings of *University of Maryland* are also applicable here. The court in *University of Maryland* declined to abstain because there were claims asserted in the federal court that could not be asserted by the Commissioner in the state court proceedings. 923 F.2d at 271. As explained by the Third Circuit, some of the claims were the personal claims of policyholders as opposed to claims that could be asserted only by the Insurance Commissioner. *See id.* at 273.

That situation does not exist here. All of the losses that are alleged by plaintiffs are losses that are common to the losses of every other policyholder and Mutual Benefit, itself. Unlike the plaintiffs in *University of Maryland,* the essence of the complaint in this action is that defendants mismanaged Mutual Benefit, rendering it insolvent. The analysis contained in section 1.B., *supra,* concerning permissive intervention, is equally applicable here, and hence will only be summarized below. The plaintiffs' "fraud claim [i]s premised on conduct that injured the institution[ ], and plaintiffs' losses [were] incidental to and flow[ed] from that injury." *Id., citing In re Sunrise Securities Litigation,* 916 F.2d 874, 884 (3d Cir.1990). The pleadings indicate that plaintiffs were injured derivatively as a result of a harm to Mutual Benefit, rather than directly; nowhere in the Complaint do plaintiffs' allege that they were injured as of the date of their purchase of the annuities. They allege that their injury did not occur until after Mutual Benefit became insolvent. *See* Complaint ¶ 18.

Moreover, plaintiffs' reliance argument— that they relied on false and/or misleading statements made by defendants—does not suggest any injury which is distinct from the harm suffered generally by policyholders and other claimants as a result of Mutual Benefit's rehabilitation. Plaintiffs do not suggest that they relied on any unique information which was privately disseminated by a director.

Plaintiffs instead refer to their reliance on publicly disseminated information. For example, in paragraph 43 of the Complaint, plaintiffs aver that defendants "engaged in a systematic and long-term advertising, endorsement and promotional campaign to promote the sales of Mutual Benefit Life annuities[.] ..." This long-term advertising campaign was directed at an *entire market of consumers* which included plaintiffs [sic]." *See also* Complaint ¶ 44. Similarly, in paragraph 57, plaintiffs assert that defendants "actively and jointly drafted, revised and approved the prospectus or aided and abetted the preparation of the prospectus, by which the annuities were offered to the investing public ... [and] were widely distributed by defendants."

■ Regardless of the direct versus derivative issue, plaintiffs argue that the Rehabilitator lacks standing to assert their section 10(b)–5 claims against the directors and officers.[7] Plaintiffs seemingly contend that because their claim is based upon a federal statute, the issue of standing is singularly a federal question. However, this fact, as *In re Sunrise* stated, "does not render state law irrelevant." 916 F.2d at 879, *citing Burks v. Lasker*, 441 U.S. 471, 477–78, 99 S.Ct. 1831, 1836–37, 60 L.Ed.2d 404 (1979).

The New Jersey Act specifically provides the Rehabilitator with standing. Under New Jersey law the Rehabilitator has the power to "continue to prosecute and to institute in the name of the insurer or in his own name any an all suits and other legal proceedings, in this State or elsewhere, and to abandon the prosecution of claims he deems unprofitable to pursue further". N.J.S.A. 17B:32–50(a)(14). The Rehabilitator has the additional power "to prosecute *any action* which may exist *on behalf of* creditors, members, policyholders or shareholders of the insurer against any director or officer of the insurer, or any other person." N.J.S.A. 17B:32–50(a)(15) (emphasis added), The Act defines "insurer" to include. "every person engaged [or purported to be engaged] as indemnitor or contractor in the business of life insurance, health insurance or of *annuities* … in this state." N.J.S.A. 17B:32–33 (emphasis added). It follows then that the annuity products plaintiffs complain of are encompassed in and regulated by the Act.

The New Jersey law does not attempt to close the federal courts to certain claims; rather, the law takes standing away from individual claimants and vests it in the Rehabilitator for the benefit of all creditors and policyholders with a view to ensuring an efficient and orderly rehabilitation. *See In re Integrity Insurance Co.*, 240 N.J.Super.

480, 573 A.2d 928 (App.Div.1990).[8] This Court should accept New Jersey's law on standing provided that it is consistent with federal policy. *See In re Sunrise*, 916 F.2d at 879. The only relevant federal policy is the protection of the securities markets through private enforcement of the securities laws. Permitting the Rehabilitator to bring claims on behalf of policyholders and annuitants for the benefit of Mutual Benefit and all of its policyholders and annuitants has no adverse effect on this policy.[9]

This is not a case where plaintiffs' federal claims give them an independent or separate remedy. No further relief can be obtained by asserting the section 10(b)–5 claim vis-a-vis the Rehabilitator's state court common law fraud claim. This is not a case where plaintiffs' can obtain treble damages or punitive damages, which they could not pursue in state court. The plaintiffs have the same remedies in state court that they seek here. To the extent that plaintiffs can trace their damages to the defendants' alleged fraud there is no equitable basis for permitting the amount of their damages to be determined in a different forum than the one which shall determine that which the other policyholders and creditors are due as a result of the same fraud. *See LAQ*, 864 F.2d at 1046 (it is inequitable for some claimants to receive more on their claims than other similarly situated claimants).

For all the reasons given, the Court concludes that "timely and adequate" state court review is available for plaintiffs' claims as they in essence are fraud claims.

## C. The Disruption Rationale

■ *Burford* abstention requires more than a desire to avoid disrupting a state regulatory system. *See NOPSI* 491 U.S. at 362, 109 S.Ct. at 2514; *Grode*, 8 F.3d at 959.

---

7. Defendants have eloquently argued that plaintiffs claims should be dismissed on the merits. In light of my conclusion that abstention is appropriate, it would be inappropriate as well as unnecessary to address these issues.

8. In this way, the Act's provisions are no different than a law which allows a shareholder to bring a claim on behalf of a corporation that purchases a security.

9. Contrary to plaintiffs' contention, the Rehabilitator can assert a section 10(b)(5) claim pursuant to *Blue Chip Stamps*, 421 U.S. 723, 95 S.Ct. 1917. *Blue Chip Stamps* requires the person on whose behalf the claim is brought to be a seller or purchaser of securities; it does not require the person who brings the claim to be a purchaser or seller. *Id.* at 731, 95 S.Ct. at 1923.

For example, in *Grode*, the Third Circuit found abstention inappropriate when the insolvent insurer instituted an action to recover an alleged debt. *Grode*, at 959. The court held simply debt actions that happen to involve insolvent insurers are "not matters of important regulatory concern or actions interfering with important state policies." *Id.* The district court need look only to the four corners of the document to determine the claim, not to state policies or laws. Consequently, "the mere existence of state administrative procedures, or even a complex state administrative apparatus, does not necessarily warrant abstention." *University of Maryland*, 923 F.2d at 272 (citation omitted).

Because a mere avoidance of disruption rationale "would justify abstention in any instance where a matter was within an administrative body's jurisdiction," *Burford* abstention requires more: "among other considerations, that the regulatory system have as a central purpose uniformity to achieve important local interests that would be frustrated by federal court review." *Id.*

There is no dispute that New Jersey has created complex regulations relating to insolvent insurance companies, plans of rehabilitation and payment to policyholders and creditors. It is clear that a partnership exists between the New Jersey state courts and the Rehabilitator. The state court issues the order for rehabilitation, enjoins suits against the insolvent insurer to protect the estate, and oversees the rehabilitation plan. *See LAQ*, 864 F.2d at 1045. But, as *Grode* and its progeny teach, this is not sufficient to justify abstention. Here, as in *Grode*, where abstention was found inappropriate, the Rehabilitator is not called upon to dissipate Mutual Benefit's assets defending unconnected law suits throughout the country. *Id.*, citing *LAQ*, 864 F.2d at 1045. Mutual Benefit is not the defendant in this action. It is not even the plaintiff, although its interests are aligned with plaintiffs.'[10]

However, this is the point at which *Grode* is distinguishable from the present matter. In concluding that abstention was not warranted, the Third Circuit focused on the number of plaintiffs affected by that action. *Grode* was not a case where there were "a large number of similarly situated plaintiffs competing for a limited amount of money." *Grode*, 8 F.3d at 960. It was a simple contracts action where the insurer was not "called upon to dissipate its funds *defending*" unconnected suits in a variety of forums, but rather was trying to collect against one debtor in a forum the insurer chose. *Id.* at 960 (emphasis added). The *Grode* court drew this analogy:

> courts abstain in suits against insolvent insurance companies for the same reasons that district courts refer bankruptcy cases to the bankruptcy courts: Insurance companies tend to issue identical policies to a large number of people, rendering a single forum necessary to dispose equitably of the company's limited assets so as to avoid a race to the courthouse.

*Id.* at 960.

This matter fits the Third Circuit's analogy. Mutual Benefit issued identical annuity policies to approximately 200,000 people. If each and every annuitant pursued his or her claim, there would be unconnected law suits across the country. While the Rehabilitator would not be defending the insurer, or its directors or officers, in this kaleidoscope of actions, he would nonetheless be implicated and involved. This Court will not speculate as to whether the Rehabilitator would intervene in these lawsuits, hence it will not engage in a hypothetical concerning the maximum potential burden placed on the Rehabilitator litigating the issues in multiple fora. However, we know now that this litigation, at a minimum, will result in burdensome discovery demands on the Rehabilitator as discussed *supra*.

Adjudicating the issues in a single forum would prevent claimants from racing to the courthouse and thwarting the scheme of centralization envisioned in New Jersey. The Act clearly provides that the Rehabilitator should centralize all claims that would benefit policyholders, creditors and claimants. The

---

10. In this way, this case (like *Grode*) is distinguishable from those where abstention was proper. In every case the Court has examined where abstention was proper, the insolvent insurer was the defendant.

Act also provides the priority for distribution of claims from the insurer's assets. N.J.S.A. 17B:32–71. Included in the distribution scheme are payment for "claims under life insurance and *annuity policies,* whether for death proceeds, annuity proceeds, or investment values." *Id.* at 17B:32–71(a)(3) (emphasis added). Should the Rehabilitator recover against the defendants on his claims, it would benefit not only plaintiffs but all Mutual Benefit policyholders and creditors. The structure of New Jersey's system is to centralize claims so that they can be efficiently and equitably disposed of.

Plaintiffs assert that there is no reason to assume insolvency on the defendants' part. But, even absent the assumption of solvency, there is no reason why plaintiffs and the Rehabilitator cannot be treated as any other creditors competing for the same limited pool of resources.

Allowing this litigation to proceed would most probably reduce the monies inuring to the benefit of Mutual Benefit and hence to the benefit of all policyholders, annuitants and creditors. Not only would double litigation (which is an expense to be deducted from the D & O policy limits) reduce the possible amount the Rehabilitator may recover, it may diminish the Rehabilitator's opportunity to increase the size of Mutual Benefit's estate. While this action is not a claim on the assets of Mutual Benefit, it is a case where a single forum should regulate litigation so as to permit an equitable allocation of the limited litigation resources contained in the D & O policy.[11]

## CONCLUSION

The teachings of *Burford* require that the Rehabilitator be allowed not only to conduct the rehabilitation, *see General Glass,* 973 F.2d at 203, but also to carry-out his statutory duties without interference. There is no dispute that New Jersey has created the comprehensive mechanism for the regulation of insolvent insurers which *Burford* allows this Court to defer to.

11. Through abstention, the annuitants and policyholders potentially will receive a greater share of the D & O policy proceeds because the position of the Rehabilitator is statutorily created.

This Court recognizes that plaintiffs suffered a loss when Mutual Benefit became insolvent. However, this fact does not allow plaintiffs to circumvent the comprehensive and centralized regulatory scheme New Jersey has created to pursue their claims here. As the Rehabilitator is pursuing a claim under the common law that in every relevant way is identical to plaintiffs' claims, as well as to the claims of every other Mutual Benefit policyholder, plaintiffs will receive timely and adequate review of their action. Moreover, continuation of this action will disrupt the efforts of the Rehabilitator, given the document demands. It may also thwart the distribution mechanism contained in the Act.

While plaintiffs' primary source of recovery should come through the efforts of the Rehabilitator on behalf of Mutual Benefit, the Court is sensitive that plaintiffs may not be made whole. Hence, the Court dismisses this action without prejudice. At the conclusion of the Rehabilitator's action, should plaintiffs remain unsatisfied, they may reinstitute this action.

For all the above reasons, the Court will dismiss this action without prejudice as *Burford* abstention is appropriate.

An appropriate order is attached.

## *ORDER*

For the reasons set forth in the Court's Opinion filed herewith,

It is on this 13th day of December, 1993,

ORDERED that Commissioner Samuel F. Fortunato's motion to intervene is granted for the sole purpose of permitting him to move to have this action dismissed or stayed; and it is further

ORDERED that the Court abstains from exercising its jurisdiction over the subject matter of this action; and it is further

ORDERED that Commissioner Samuel F. Fortunato's motion to dismiss this litigation is granted; and it is further

Unlike plaintiffs' class, the Rehabilitator will not seek a percentage of the fund in Court for payment of his counsel fees.

ORDERED that defendants' motion to dismiss the complaint or stay the action is denied; and it is further

ORDERED that this matter is dismissed without prejudice.